Head *v.* Goodwin.

---

HEAD *versus* GOODWIN, & al.

In an action of tort, wherein the defendants are described, and the wrongful act is alleged to have been done by them, as partners, and they severally plead the general issue, the allegation regarding the partnership, is immaterial and need not be proved.

Where the defendants, in an action of trover, set up a title to the property alleged to be converted, by purchase, and they fail to establish their title, the conversion takes place at the time they received and claimed it as their own.

A *bargain* for personal property of more value than thirty dollars, without any delivery, or any thing in earnest to bind it, or part payment, or some

note or memorandum of it, in writing, signed by the party with whom the bargain is made, does not change or affect the title of the property that is the subject of it.

A grant of goods, which do not belong to the grantor at the time of the grant, is void.

And if the grantor subsequently acquire title to such goods, it requires some *new act* on his part, evidential of carrying the sale into effect, to transfer the title to such grantee.

Where A sold *one half* of a chaise to which he had no title, and afterwards purchased the chaise, and the same night delivered it to the custody of the person to whom he had sold *one half*, without any avowal that the delivery was to effectuate the former sale, this was not such a *new act* as to transfer the property.

The validity of a mortgage of personal chattels, is not impaired, from the fact that it is recorded upon a book of the town records.

A certificate of the clerk of the town, on the back of such mortgage, when it was received, is legal evidence of the fact so certified.

And when he further certifies that he has recorded it, without other date than that of its reception, *that* is to be taken as the *time* it was recorded.

The recording of a mortgage of personal property, supersedes the necessity of noting in the book of records, the time when it was received.

ON REPORT from *Nisi Prius*, SHEPLEY, C. J., presiding.

TROVER, for a chaise. The writ alleged that the defendants were partners, and as partners they converted the chaise to their own use.

The defendants severally pleaded the general issue.

The plaintiff offered testimony tending to show that on May 10, 1851, he sold the chaise to one Daniel Tibbetts and received in cash $45, and took his two notes for the balance for $60 each, on six and nine months, and took a mortgage of him on the same property to secure the notes. It appeared that Tibbetts lived in Biddeford. The mortgage was produced, and upon the back of it was a certificate of the clerk of that town, "received and entered May 13, 1851, 9½ o'clock, A. M. Recorded on the 309th page of 9th Book, Biddeford Town Records." [This evidence of recording was objected to.]

The plaintiff's witness testified, that the sale was made in Portland, and the chaise delivered there; that during the following summer he saw the chaise at the defendants'

stable in Biddeford, and that Nelson, one of defendants, told him they had purchased out Tibbetts. Both of the defendants spoke of the mortgage, and of the amount due thereon.

When the first note became due, the plaintiff called on Tibbetts, but was unable to collect it, and then demanded the chaise of defendants, exhibiting his mortgage, and they refused to surrender it.

The defendants introduced Daniel Tibbetts, who testified, that he bargained for the chaise three or four days before he went after it. He took the chaise the day the notes were given, and delivered half to Nelson, one of defendants, the same night; that nothing was said between them about a sale that evening; he had sold one half of it to Nelson on Friday before, and given him a bill of sale, (not produced,) and that he had paid in full; that the chaise was delivered to him the day the writings were made. The other half, he sold to Goodwin, the other defendant, between the 15th and 20th of same May; that he did not tell Nelson, when he sold to him, that he had mortgaged it.

The case was taken from the jury by consent, and submitted to the decision of the full Court, with authority to enter such judgment as the law may require.

*E. R. Wiggin,* for plaintiff.

1. Was the mortgage properly recorded?

The town clerk of Biddeford certifies on the mortgage the time when it was received and entered; the book and page where recorded. This certificate was admissible and conclusive of the fact there stated. R. S., c. 125, § § 32, 33.

When the statute requires a particular person to make a record, that record, certified by the person making it, is conclusive evidence of the fact of recording, and *prima facie* evidence of the authority of him certifying. 1 Greenl. Ev. § § 92, 483 and 484; Phil. Ev., Cowan & Hill's notes, note 805, and cases there cited; *Ames* v. *Phelps,* 18 Pick. 314.

2. Is there evidence of such a sale of one half the chaise

to Nelson, before the mortgage was recorded, as vested the property in him?

The bill of sale given by Tibbetts to Nelson, should have been produced or its loss accounted for. This not having been done, all Tibbetts' testimony as to the sale, should be stricken out. 13 N. H. 283; 2 Denio, 637; 1 Greenl. Ev. § 87; 3 Stark. Ev. 1006; 1 Phil. Ev. 218, and cases there cited; 7 Cowan's R. 334.

But if Tibbetts' testimony, as to the sale, be not stricken out, then it shows no such sale as vested the property in Nelson. The sale was made on *Friday*, but Tibbetts had no right, title or interest in the chaise till *Saturday* following, when he bought it of Jewell in Portland. *Owning nothing*, he of course *sold nothing*, and hence by virtue of that sale, Nelson acquired no property in the chaise. In *Jones* v. *Richardson*, 10 Met. 481, the Court say, "that a person cannot grant or mortgage property of which he is not possessed, and to which he has no title, is a maxim of law too plain to need illustration, and which is fully sustained by all the authorities." Nelson having acquired no property in the chaise on Friday, must hold, if at all, by virtue of a sale to him subsequent to the plaintiff's mortgage. Tibbetts says there was nothing said about a sale, after he got the chaise home, and after the mortgage was made, but that he delivered one half of it to Nelson that night. This is evidence of a delivery, and had not the rights of third parties intervened, might have vested the property in Nelson; but those rights intervening, a sale was necessary to give him any property in the chaise. A simple delivery passes no property unless it may be as bailee.

*Wilkinson* and *Tapley*, for defendants, furnished a written argument of great length, in which the following positions were taken and elaborately argued.

1. We say that the plaintiff having failed to prove the partnership alleged, it is fatal to his action.

2. That having alleged a conversion six months prior to

the time proved, and prior to the time when any had been committed, is equally fatal.

3. That there is no evidence of a legal and valid demand, and consequently no conversion at all proved, and must be an end to the plaintiff's case.

4. The defendants were purchasers without notice of the plaintiff's title, which is by mortgage; that there is no legal or competent evidence of a registration according to the statute, and no knowledge on the part of the defendants proved of the vesting of the mortgage.

5. That if both are not purchasers without notice, at least one of the defendants is, and being tenant in common with the plaintiff, he cannot maintain his action; and if he cannot maintain it against both, he cannot against either.

TENNEY, J. — The title of the plaintiff to the chaise in controversy, is under a mortgage, dated May 10, 1851, from Daniel Tibbetts, for the purpose of securing two notes of hand, of $60 each, of the same date, and remaining unpaid at the institution of this suit. It appears by the mortgage, and other evidence, that the plaintiff sold to the said Tibbetts the chaise on the same day that the mortgage was given. The defendants claim title by virtue of a purchase from Tibbetts, who testified, that he bargained for the chaise with the agent of the plaintiff three or four days before the time when the mortgage was given, made a bill of sale of the chaise the day before the date of the mortgage and various articles of property besides; but it appeared by his testimony, that he sold only one half of the chaise at that time to Nelson, one of the defendants, and the other half to Goodwin, the other defendant, between the 15th and the 20th of May, 1851.

The counsel for the defendants contend, that the bargain three or four days before the mortgage to the plaintiff, so vested the property in them, that the sale of one half thereof became perfect in Nelson, before it could be affected by the mortgage. But Tibbetts, having admitted his purchase

to have been made on the day of the date of the mortage, and the price of the property exceeding the sum of thirty dollars, Tibbetts not having received it at the time of this bargain, which was not bound by any thing given in earnest for that purpose, or in part payment therefor, and not having taken any note or memorandum from the plaintiff in writing and signed by him of the bargain, an earlier title of Tibbetts than that acquired on May 10, 1851, cannot be legally insisted on.

The certificate of the clerk of the town, where the mortgager resided, of his receipt of the same upon the back of the mortgage, is sufficient proof that it was left with him to be recorded at the time stated in the certificate. *Ames* v. *Phelps*, 18 Pick. 314. And there being one date only to the certificates on the back of the mortgage, the further statement thereon, that it was recorded on the town records, it must be understood as recorded at the same time. This record supersedes the necessity of the clerk's noting on the book in which the record was made, the time when the mortgage was received. *Sprowle* v. *Hardy*, 31 Maine, 73.

It is objected, that the record being made upon the *town records*, and it not appearing that it was made upon a book kept for the purpose, the requirement of the statute has not been complied with. The records of mortgages of personal property must be made by the town clerk. The books on which they are made belong to the office, and not to the individual, who may make the record. On retiring from office he has no right to the book on which such records are made; neither is he entitled to remove them as his own property; but they pass into the hands of his successor; and are open to the inspection of all, who may be interested in any thing contained therein. The statute provisions are substantially the same, as those appertaining to the register of deeds, as to the reception and recording of deeds, depositions, levies, &c. Certificates on the documents, recorded by the latter, that they are recorded upon

the records of the county named, are not defective. The statute does not provide, that the record of mortgages shall be upon a book kept exclusively for that purpose, and it is believed, that the certificate in this case is as specific and full as to meet the legal requirement. The book was used for the purpose in this instance, and nothing appears that it was not so used in others.

The mortgage was recorded on May 13, 1851, at 9½ o'clock, A. M. Tibbetts testified, that he "brought the chaise out of Portland on May 10, got out Saturday night, Nelson and I at the stable that evening, and delivered chaise to him, nothing said between us about the sale of it that evening, sold one half of it to Nelson Friday before, gave him a bill of sale, it included chaise bargained for with Jewell, and took pay for them."

The law is well settled, that a grant of goods which do not belong to the grantor at the time of the grant is void. But after the grantee has acquired a title thereto, the grant may be made effectual to pass the property, *by a new act.* And the question, what must be the character of the new act, has undergone discussions in England and this country by the courts; and there seems now to be but little controversy in relation thereto. *Lunn* v. *Thornton*, 1 Man., Gran. & Scott, 379. This was a case where the plaintiff therein "by deed poll, bargained, sold and *delivered* to the defendant all his implements of trade, and other effects whatsoever, then remaining, or which should at any time thereafter remain and be in and upon, or about his dwellinghouse at Stoney Stratford, and also all other effects elsewhere. Afterwards, under color of the assignment, the defendant seized all the goods, then upon the premises, and among them, certain goods, which were not upon the premises, or in the plaintiff's possession at the time of the execution of the deed poll, but were acquired by the plaintiff afterwards, and were upon the premises at the time of the seizure." Lord Bacon's Maxim, Reg. 14, which is in these words:— *Licet dispositio de interesse futuro sit inutilis, tamen potest fieri*

*declaratio præcedens, quae sortiatur effectum, interveniente novo actu,*" was applied. And it was held that notwithstanding the seizure on the premises, that there was no new act done, indicating an intention in the grantor, that these goods should pass under the former bill of sale. TINDALL, C. J. delivered the opinion of the Court, after taking time for advisement, and says, " the new act, which Bacon relies upon, appears in all the instances, which he puts, to be an act done by the grantor, for the avowed object, and with the view of carrying the former grant, or disposition into effect.

In *Jones* v. *Richardson,* 10 Met. 481, the same question was presented, under a mortgage of property not owned by the mortgager at the time it was executed; and the mortgagee offered to prove that the property in question, after it was acquired by the mortgager, and before the rights of the defendant, who was an attaching creditor of the mortgager, had intervened, was taken into his possession, with the other property, for the purpose of foreclosing the mortgage. This proof was deemed irrelevant by the Court, and the Judge who delivered the opinion says, —" He did not prove or offer to prove any act done by the mortgager, after the mortgage was duly executed, by which he ratified the same, as to the subsequently acquired property." The construction put upon Lord Bacon's maxim in *Lunn* v. *Thornton,* was fully adopted, that there must be an *avowal* of the object *with the view* to carry the former grant into effect.

In the present case, the strongest import of the testimony as proof of a new act, relied upon by the defendants as sufficient, is, that on Saturday night of May 10, the chaise was delivered to Nelson, at his stable, and nothing said about the sale of it that evening. The purpose of the delivery was not disclosed, and it cannot be inferred with any degree of certainty, that it had any connection with the attempted sale the day before. It was at Nelson's stable, where it was highly probable, that people were in the habit of seeking ac-

commodation for their horses, and carriages would be delivered to the proprietor for safe keeping. There is nothing to show that such might not have been the purpose of Tibbetts, when the chaise was left with Nelson on Saturday night. The delivery spoken of was of the chaise, when it was only of one half thereof which had been the subject of the sale relied upon, a circumstance of some little weight, to be considered in reference to the question of the intention, touching the "new act." At any rate, the object of Tibbetts in the delivery was not avowed to be for the purpose of carrying the sale into effect, nor was there any declaration of such a view, which seems to be regarded as indispensable, and necessary to be made in some manner. Nothing was done, before the recording of the plaintiff's mortgage from Tibbetts, which could make the sale to Nelson effectual. The contract of sale for the other half of the chaise to the defendant Goodwin, was after the mortgage was recorded, and could not affect the plaintiff.

In November, 1851, after the first note given by Tibbetts to the plaintiff became payable, Jewell, who had acted as the agent of the plaintiff in making the contract of sale of the chaise, was unable to collect the note, and called upon the defendants at their stable, where the chaise then was, showed them the mortgage, and demanded the chaise of them. They answered, that they should not give it up, till they were obliged to do so ; and they said they had bought it. In this last declaration they are confirmed by Tibbetts, who testified, that he sold the chaise to them and took his pay.

Jewell having the mortgage in his possession, and having shown it to the defendants, at the time when the property was demanded, and the plaintiff having subsequently commenced this suit, is satisfactory evidence, that the demand was made by sufficient authority. The refusal of the defendants to surrender the chaise on demand is evidence of a conversion; and they having claimed to hold the chaise, unaffected by the mortgage, and for a full price, by a purchase thereof, and not of the right of Tibbetts merely, the

conversion may be considered as made at the time the property was taken by them as their own. But whether at that or any subsequent time before this action was commenced, is quite immaterial; the question being whether it was converted, and not at what particular time, the conversion took place.

The defendants being sued as partners, and it being alleged in the declaration, that as partners, they converted the property; and the defendants having pleaded severally the general issue, it is insisted by them that the partnership is a material allegation, and must be proved. The law treats all torts, several as well as joint, and upon such a plea as is here filed, a verdict might be for the plaintiff as to one of the defendants only, and in favor of the other, and a judgment could be entered against the former. The evidence is satisfactory, that both are guilty of the conversion of the property, and they cannot be regarded as less so, in this action, and under the issue presented, by being charged as having made the conversion as partners.

*Defendants defaulted.*

SHEPLEY, C. J., and WELLS, HOWARD and APPLETON, J. J., concurred.