JAMES E. LANPHERE, JACOB S. SPAUN, AND JOHN C. SEMONES, PLAINTIFFS IN ERROR, v. SOPHIA LOWE, DEFENDANT IN ERROR.

**Fixtures** erected by a tenant during his term, the removal of which will not injure the demised premises, or put them in a worse plight than they were before, are in law deemed personal property, and may be mortgaged as chattels, or levied on as personalty, and sold upon execution, and the purchaser at such sale has the right to enter upon the premises to remove them. A building put on the leased premises by the tenant, and set on blocks, without cellar or foundation under it, *held* to be such fixture.

**Chattel mortgage and lease :** PRIORITY OF LIEN. A tenant of demised premises under a lease, containing a provision that all unpaid rent and taxes should be a special lien upon all improvements and buildings which might be placed upon the premises, and forbidding their removal till so paid, but which lease was not recorded, executed a chattel mortgage upon a building which he had erected thereon, after the leasing of the premises. In an action brought by the lessor to enjoin the mortgagees from removing or interfering with the building in question, *it was held,*

1. That the building, although erected on land of the lessor, yet being personalty, and subject to all the incidents of personal property, the mortgagees were not charged with notice sufficient to put them upon inquiry as to any legal or equitable title of the lessor.

2. That the lease, not having been put on record, could not affect the rights and liens of third parties without notice.

3. That the mortgagees secured by their mortgage a lien upon the building, and a superior equity to the claim of the lessor under the provisions of the lease.

Lanphere, et al., v. Lowe.

4. That the provisions of the lease, to secure a lien on all improvements that might be erected on the premises, for the payment of rent and taxes, was not a mutual agreement to erect any such improvements, but a mere effort on the part of the lessor to create a lien upon something not *in esse. Per* GANTT, J.

THIS action was commenced by Sophia Lowe, in the district court of Douglas county, to obtain an injunction perpetually restraining the plaintiffs in error from removing or interfering with a certain frame building situated on a portion of lot five, in block one hundred and thirty-four, of the city of Omaha.

Upon a trial of the cause, before Chief Justice Lake, a decree was entered against the plaintiffs in error, perpetually enjoining them from removing or interfering with the building in question. The cause was then brought here by petition in error. The facts are fully stated in the opinion of the court.

*Spaun & Pritchett* for plaintiffs in error.

I.  James E. Lanphere owned the building in question, and, but for the clause in his lease with Lowe and the chattel mortgage, would have been at liberty to remove and dispose of the same at his own pleasure. The sole claim and right to the building which Mrs. Lowe acquired or can have, is by virtue of the clause in the lease, and her action and claim is founded upon it. The building was, and is a personal chattel, and never was attached in any way to the freehold, and the priority and rights of Mrs. Lowe, and of the plaintiff in error, Spaun, must be determined upon the principles of law applicable to lienors of personal property. That the evidence in the case abundantly shows that the building was a personal chattel, and so even as between vendor and vendee. *Burrill's Law Dictionary, title — Fixtures. Fisher v. Saffer*, 1 *E. D. Smith*, 612. 2 *Smith's*

*Leading Cases,* 99.   2 *Kent Com.,* 345.   *Walker v. Shearman,* 20 *Wend.,* 636.   *Teaff v. Hewitt,* 1 *Ohio State,* 430.   *Lowenberg v. Bernd,* 47 *Missouri,* 297.

II.  The building being personal property, the plaintiff in error, Spaun, as assignee of Richards & Motheshead, the mortgagees, is entitled to priority over Mrs. Lowe, if Richards & Motheshead actually advanced value for the mortgage, and had no notice of Mrs Lowe's claim under the lease.  *Bennet v. Earll,* 21 *Wend.,* 117. *Milliman v. Neher,* 20 *Barb.,* 36.   *Wood v. Lester,* 29 *Barb.,* 146.   *Johnson v. Crofut,* 53 *Barb.,* 274.   *Baskins v. Shannon,* 3 *New York,* 310.   *Story's Equity Pleadings, Sec.* 604.

III.  The evidence shows that Richards & Motheshead parted with value for their mortgage, and that Motheshead had no notice of Mrs. Lowe's rights, and evidence of the other partner, Richards, was offered upon the trial to show that he had no notice, but was ruled out by the court, in which it is claimed the court erred.

IV.  The priorities of the liens or rights of Mrs. Lowe, and plaintiff in error, Spaun, were fixed when the chattel mortgage was filed for record.   *Meech v. Patchin,* 14 *New York,* 71.

*B. E. B. Kennedy,* for defendant in error, contended:

I.  The legal title to the land on which this building stood being in the defendant, the mortgagee was charged with notice sufficient at least to put him upon inquiry as to any legal or equitable right of the defendant in the property.

The legal presumption is that all the buildings and improvements are attached to and form a part of the realty until the contrary is shown.

The landlord has a lien on growing crops. *Case v. Hart and Humphrey*, 11 *Ohio*, 364. And, by parity of reason, on all improvements which are in their nature connected with the realty.

II. The building was not subject to attachment or execution levy. *Otis v. Wood*, 3 *Wend.*, 498.

GANTT, J.

This is an action for an Injunction to restrain plaintiffs from removing a building off land of the defendant.

On the 28th of September, 1869, the defendant demised to Lanphere a part of a vacant lot of ground in Omaha City, for the term of five years. Lanphere agreed to pay defendant for the use of the premises, the taxes accruing thereon during the term, and a certain stipulated rent for each year, to be paid quarterly. He took possession under a written lease, and afterwards placed on the ground certain improvements, and has occupied the same in part as a dwelling house, and in part as a house of trade or business.

The lease provides that in case he shall fail to pay the rent and taxes, the defendant might, at her option, declare the lease at an end and re-take possession of the premises; and further provides, " that all unpaid rents and taxes, that shall remain against said premises, shall be and they are hereby made a special lien upon all improvements and buildings which may be erected or placed upon said premises, and that no improvements or buildings shall be removed from said premises, while any rents which have become due, are unpaid, or any taxes remain unpaid upon the same."

It is alleged that the plaintiffs were about to remove the building off the premises, and that they had conspired together to defraud the defendant; therefore the defend-

ant asked for a perpetual injunction, and prayed that it may be adjudged she has a valid and prior lien upon the building, to secure the payment of the rent and taxes, superior to the claim of the plaintiffs. The lease was not recorded.

On the 21st of October, 1869, Lanphere in order to secure the payment of a note to Richards and Motheshead, executed and delivered to them a chattel mortgage on the building, which was recorded December 21, 1869. The mortgagees assigned the note and mortgage to the plaintiff Spaun, who denies the lien of the defendant, and denies any conspiracy and fraud, and says that neither he nor Richards and Motheshead ever had any knowledge or notice whatever that defendant claimed, or could have, any lien upon the building by virtue of the lease or otherwise; and he claims that by virtue of the mortgage, and the recording of the same, he has a prior and superior lien to any lien of the defendant upon the building.

It appears that sometime after the execution of the lease, the building was put on the leased premises by the tenant, and set on blocks, without any cellar or foundation under it, and was so placed on the premises for a dwelling house, and house of trade or business, and was so occupied by the tenant.

Now, if this building shall in law be deemed personal property, then it must necessarily follow as a sequence that it is subject to chattel mortgage, and is liable to levy and sale upon execution for debts of the tenant. Therefore, the first question for consideration is, what fixtures erected by a tenant during his term, upon the demised premises, are removable by him? for, if removable, then such fixtures are personalty, and not real property.

The general common law rule is, that whatever is annexed to the freehold becomes part of it; but as far back as we can trace the rule in the books, it was not inflexible, and had its exceptions. As between tenants

for life or in tail, and remainder-man or reversioner, it was construed liberally in favor of the former. And in *Van Ness v. Pacard*, 2 *Peters*, 143, it is said, that "an exception of much broader cast, and whose origin may be traced almost as high as the rule itself, is of fixtures erected for the purposes of trade. Upon principles of public policy, and to encourage trade and manufacturers, fixtures which were erected to carry on such business, were allowed to be removed by a tenant during his term, and were deemed personalty for many purposes." And the "question whether removable or not, does not depend upon the form or size of the building, whether it has a brick foundation or not, or is one or two stories high, or has a brick chimney. The sole question is whether it was designed for the purpose of trade. * * * * And the fact that the house was used for a dwelling house, as well as for trade, is no ground to declare that the tenant was not entitled to remove it." *Lawton v. Lawton*, 3 *Atk.*, 13. *Penton v. Robart*, 2 *East*, 88. *Pooles Case*, 1 *Salk.*, 368.

And this right of removal, in later decisions, is so far extended as between landlord and tenant, that a "tenant for life, for years or at will, may, at the expiration of his estate, remove from the freehold *all* such improvements as were erected or placed there by him, the removal of which will not injure the premises, *or put them in a worse plight than they were in when he took possession.*" *Whiting v. Brastow*, 4 *Pick.*, 310.

However, as between vendor and vendee, the rule is different from that of landlord and tenant. In the former case, anything of a permanent nature fitted for and actually applied to use upon the premises by annexing the same, becomes part of the realty and passes to the vendee, though it might be removed without injury to the premises. 1 *Washburn on Real Property*, 15. But in the latter case, whatever a tenant affixed to the leased

premises may be removed by him during his term, provided the same can be done without injury to the freehold. Nor will a conveyance of the premises by the landlord, interfere with the rights of the tenant in respect of such fixtures. *Ibid* 18, *Sec.* 27.

In the case at bar the demised premises were vacant when demised to the tenant, and the tenant put his building on the same and set it on blocks, without a foundation under it. The removal of such a building clearly comes within the rule, that the tenant may remove from the freehold all improvements erected by him, the removal of which will not injure the premises, or put them in a worse plight than they were in when he took possession.

And it seems clear also, upon principles well founded in reason and public policy, that the rule of law is well established, that buildings placed upon leased premises by the tenant, to be used for the purpose of trade and business, *are in law deemed personal property*, and may be mortgaged as chattels, or levied on as personalty, and sold upon execution, and that the purchaser at such sale has the right to enter upon the premises to remove them. *Lemar v. Miles*, 4 *Watts*, 332. *Doty v. Gorham*, 5 *Pick.*, 487. *Van Ness v. Pacard, supra.*

And I think, upon principle, the rule with equal force applies to all other fixtures erected by the tenant, which are removable during his term.

The second question raised in the case, and urged by counsel is, that the building being on the land of defendant, the mortgagees were charged with notice sufficient to put them upon inquiry as to any legal or equitable right of the defendant. In some cases it is true, that a party may have sufficient notice to put him upon inquiry in respect to the subject matter in controversy; but if, as I think very clearly appears, the building is in law deemed a personalty, subject to all the incidents of personal prop-

erty, then this doctrine of notice does not apply to this case, because at the time the mortgage was given, and when the same became forfeited, the property was in the possession of Lanphere, the tenant.

But in respect of claims of lien by written pledge, the notice, to be sufficient, must be full, clear, and explicit; it must express the amount or sum for which the property was bound, and generally must give substantially the same information as would be given by an inspection of the deed. *Denny v. Lincoln*, 13 *Met.*, (*Mass.*), 203. And the notice must be certain and true in point of fact, not vague and general expressions resting on hearsay. *Butler v. Stevens*, 26 *Maine*, 484. The law does not favor secret liens.

The third question raised by the pleadings, and urged in the argument, is, whether the defendant has a valid, prior lien, by virtue of the lease, on the building to secure the payment of the rent and taxes, superior to that of the mortgagees, under the mortgage, upon the same? The provision in the lease to secure a lien on the building, is not a contract between the defendant and the tenant, in which they mutually agree that the tenant shall erect certain buildings, and the defendant shall have an interest in the same, to the extent of all unpaid rent and taxes. It is not a mutual agreement, fixing the interests of the parties in respect of a building to be erected by the tenant. The tenant was under no contract, and entered into no contract to erect such building or any other improvement whatever. But it was an effort on the part of the defendant to create a lien, somewhat in the nature of a chattel mortgage, upon a something not *in esse*.

Can a valid charge be made upon a thing not in existence? I think it cannot. It is a very ancient rule of law, that a man cannot grant or charge that which he has not; and in *Jones v. Richardson*, 10 *Met.*, (*Mass.*),

Lanphere, et al., v. Lowe.

488, it is said that this "is a maxim of law too plain to need illustration, and which is fully supported by all the authorities." *Bac., Abr., Grants, D*, 2. *Cadman v. Freeman*, 3 *Cush*, 309. 2 *Kent Com.*, 703. *Head v. Goodwin*, 37 *Maine*, 187. *Robinson v. Donnelle*, 5 *Maul and Selw.*, 228. *Chynoworth v. Tenney*, 10 *Wis.*, 400.

This doctrine is applied to mortgages of goods which may be subsequently acquired by the mortgagee; it is equally applied to sales of personal property, and rights of property. *Chesley v. Josselyn*, 7 *Gray*, 490. *Rice v. Stone*, 1 *Allen*, 569. The lease not having been put upon record, it could not affect the rights or liens of third parties without notice. They are protected by the registry acts of our state. *Sheldon v. Conner*, 48 *Maine*, 584. There is no evidence showing that the mortgagees of the tenant had any notice whatever of the defendant's claim of lien upon the building. The building is a personalty, and was in possession of the tenant when the mortgage was executed. At the time the lease was executed the building, as appears by the facts before us, had no existence as the property of the tenant. Therefore, in any aspect of the case, as it is now before this court, I think the mortgagees secured by their mortgage a lien upon the building, and a superior equity to any claim of the defendant against the same. The judgment of the district court is reversed, and cause remanded for a new trial.

REVERSED AND REMANDED.

MR. JUSTICE MAXWELL concurs.