NEW LINCOLN HOTEL COMPANY, APPELLEE, V. STUART SHEARS, IMPLEADED WITH JOHN L. CARSON ET AL., APPELLANTS, AND JACOB E. MARKEL, APPELLEE.

FILED JANUARY 19, 1899.   NO. 8552.

Landlord and Tenant: LIEN FOR RENT: LIEN OF CHATTEL MORTGAGE. A lease executed October 16, 1890, contained a provision that it should operate as a lien on all the personal property of the lessees at any time in or upon the demised premises, to secure payment of rent. The building leased was in process of erection for use as a hotel and was not completed until January, 1891. The furniture was ordered for the hotel after the lease had been made, and because of delays in finishing the building was not placed in the hotel until in December, 1890, and January, 1891. In January, 1895, there was rent unpaid, and the lessees' successors mortgaged the furniture to secure debts by them owing to other parties who were aware of the above noted provision in the lease. *Held*, That the mortgagees were entitled to the first lien upon the furniture mortgaged.

APPEAL from the district court of Lancaster county. Heard below before HALL, J. *Reversed.*

*J. H. Broady* and *Harwood, Ames & Pettis,* for appellants.

*Pound & Burr, Wharton & Baird,* and *A. W. Field, contra.*

RYAN, C.

This action for the foreclosure of an alleged lien by virtue of a provision in the lease hereinafter described was successfully prosecuted in the district court of Lancaster county. The First National Bank of Lincoln and the personal representatives of John L. Carson have appealed from the decree whereby the mortgage to the bank and Carson was found and decreed junior and subject to the lien of the New Lincoln Hotel Company, which has succeeded by assignment to the rights of the Lincoln Hotel Company, the original lessor. From the fact that briefs have been filed only on behalf of the

aforesaid bank and the personal representatives of Carson as appellants, and of the New Lincoln Hotel Company and Jacob E. Markel as appellees, we assume that the controversy is between those parties alone, and hence shall content ourselves with quoting and describing such findings of the district court as affect the interests of these parties in this appeal. These findings were as follows:

"1. On the 16th day of October, 1890, the Lincoln Hotel Company, a corporation, by lease of that date, demised certain premises, to-wit, the Hotel Lincoln, in the city of Lincoln, Nebraska, to Samuel Shears and Jacob E. Markel for a term of ten years from the 1st day of December, 1890, to the 1st day of December, 1900.

"2. The lease contained the following provisions, to-wit: That upon the non-payment of the whole or any part of the said rental at the time when the same as above is promised to be paid, or upon violation or non-fulfillment of any of the covenants of this lease, the said party of the first part may, at its election, either distrain for the rent due and damages sustained and shall have a lien upon all the personal property of the party of the second part at any time in or upon the said premises for the payment of rent and for the security of each and every covenant herein contained, and the party of the first part may also declare this lease at an end and recover possession as if the same were held by forcible detainer. The said party of the second part hereby waives any notice of such election or any demand for the possession of the said premises.

"3. On the 16th day of October, 1890, the building was in process of erection and was not ready for occupancy as a hotel until after January 1, 1891.

"4. By an oral agreement between the parties to said lease, rent did not commence until January 15, 1891, and none of the property of the lessees involved in this suit was placed in said building until after December 1, 1890.

"5. In the latter part of October, 1890, Shears and Markel, the lessees, placed with Dewey & Stone, of Omaha, an order for furniture, amounting to over $11,-000 in value, for the Lincoln Hotel, and the same was placed therein by them, mainly in the month of December, 1890. Said lessees, on the 28th of October, 1890, placed with the Union Porcelain Works in Greenport, L. I., an order for chinaware for said hotel, stamped 'The, Lincoln,' which chinaware was delivered to said lessees at Brooklyn, N. Y., December 3, 1890, and thereafter placed by them in said hotel. On November 6, 1890, said lessees placed an order with Reed & Barton, of New York and Taunton, Mass., for silverware for the Hotel Lincoln, which, in value nearly $1,600, was delivered to said lessees at Taunton, Mass., and shipped from there to said lessees at Lincoln, December 20, 1890, and January 10, 13, 14, 1891, and was placed in said hotel on arrival at Lincoln. On November 8, 1890, said lessees placed with the John Van Range Company, of Cincinnati, Ohio, an order in value over $1,500 for ranges, boilers, and culinary utensils for the Hotel Lincoln, shipped November 26, 1890, from Cincinnati, and on arrival placed in said hotel, where all said personal property has since remained and now.is."

"9. The Lincoln Hotel Company, a corporation, said lessor, on or about the —— day of April, 1893, sold its said hotel property to the plaintiff in this suit and assigned its said lease to the plaintiff.

"10. A copy of the said lease and assignment was by the plaintiff filed in the office of the county clerk of Lancaster county on the 24th day of January, 1895.

"11. Rent to the amount of $10,500, to-wit, from the 1st day of December, 1893, to the 1st day of March, 1895, is due to plaintiff from defendants."

Mary P. Shears and Stuart Shears had succeeded to the rights and liabilities of Samuel Shears and Jacob E. Markel before February 2, 1895, and on that day executed a chattel mortgage on all the personal property

in the Lincoln Hotel to secure a note owing by them to John L. Carson and another note owing by them to the First National Bank of Lincoln. The amounts of these notes are indicated in the conclusions of law hereinafter set forth. This mortgage was filed for record on the day of its execution. It was found by the court that the bank and Carson had actual notice of the provision by which the hotel sought to create a lien for rent before said lease was recorded.

Upon the facts found there were the following conclusions of law:

"First. The plaintiff is entitled to a valid and subsisting and first lien upon all the personal property of Shears and Markel, in the possession of Shears & Shears in the Hotel Lincoln, on the 1st day of March, 1895, for the sum of $10,500 with interest at seven per cent from said 1st day of March, 1895.

"Second. That the defendants the First National Bank and John L. Carson have a valid and subsisting and second lien upon said personal property contained in said hotel,—the said bank for the sum of $4,489.80, with interest at ten per cent from February 14, 1896, and the said Carson for the sum of $3,126.81, with ten per cent from the 15th day of February, 1896.

"Third. That the defendants Hargreaves Brothers have a valid, subsisting, and third lien upon said property for the sum of $1,053.19, with interest at the rate of seven per cent per annum from August 23, 1895.

"Fourth. That said liens are due, unpaid, and plaintiff and said defendants are entitled to have said liens foreclosed and said property sold according to law."

In accordance with the above findings and conclusions the lien of the hotel company was declared paramount to that of the bank and the representatives of Carson, and the question which we feel called upon to determine is whether or not this adjustment of priorities was correct. The appellees insist that the provision of the lease quoted in the second finding of fact operated as though

35

a lease had been made October 16, 1890, contemporaneously with which there had been executed a chattel mortgage to secure payment of the rent, upon all the personal property of the lessee at any time in or upon the demised premises, and we shall accept this assumption as being correct. While this lease was of date October 16, 1890, it is evident from the findings hereinbefore quoted that not until afterwards was any of the personal property ordered or selected for use in the hotel. All of the property was sent upon orders placed in other cities than Lincoln, and the delivery in Lincoln was delayed by reason of the unfinished condition of the hotel building until in December of 1890 and January of 1891.

The appellees insist that there is no party to the record who can question the validity of the provision for the reservation of a lien in the lease, because the bank and Carson were mortgagees with notice and were not, therefore, mortgagees in good faith. We cannot see that the validity of the provision of the lease is affected by this consideration. Whether or not a chattel mortgage or its equivalent can be made so as to affect future acquired property is a question entirely dependent upon general principles independent of statute.

The case most directly in point for the appellees is *Wright v. Bircher*, 72 Mo. 179. The scope of that opinion is accurately reflected in that portion of the syllabus which is as follows: "The proprietors of a hotel took a lease for a term of years upon an unfinished building to be used when completed as part of their hotel. The rent was payably monthly. The lease was to commence, or take effect, on the first of the month after the completion of the building. It contained a stipulation that all fixtures, furniture, and other improvements should be bound for the rent. When the lease was signed, the house was unfurnished, but before it took effect, certain furniture and fixtures had been placed in the house, Held, that the stipulation created a lien, valid at least in equity; that this lien was for the full amount of the

rent reserved and not simply for any portion that might from time to time become delinquent, and that it had priority of a mortgage given after the lease took effect, but before any rent became delinquent, to a person having knowledge of the existence of the stipulation." While we cannot approve the conclusion reached, there is in the opinion such a fair statement of the attitude of the courts with reference to the validity of a lien in the case stated that we shall borrow the language of Henry, J., premising, however, that we have examined the numerous cases cited by counsel in this case and not noted in the opinion from which we quote, with the result that they serve but to increase the number of citations which might have been made in support of one or the other of two lines of cases. The language which we borrow is as follows: "One of the principal questions discussed by counsel relates to the validity of a sale or mortgage of goods and chattels not *in esse* at the date of the mortgage or sale. One might write a volume, if inclined, to review all of the adjudged cases on the subject. We are not so inclined, and deem it necessary only to state what we regard as the conclusion reached by the best considered cases. It has been frequently and ably discussed, both in English and American courts, and highly respectable authorities might be cited in support of either of the opposite views urged by the respective counsel here. The earlier English and American authorities, we think, sanction the doctrine contended for by the counsel of Nannie M. Wright [the mortgagee]. (*Jones v. Richardson*, 10 Met. [Mass.] 488; *Moody v. Wright*, 13 Met. [Mass.] 17; *Gardner v. McEwen*, 19 N. Y. 125; *Head v. Goodwin*, 37 Me. 187; *Barnard v. Eaton*, 2 Cush. [Mass.] 294; *Winslow v. Merchants Ins. Co.*, 4 Met. [Mass.] 306; *Codman v. Freeman*, 3 Cush. [Mass.] 306; *Otis v. Sill*, 8 Barb. [N. Y.] 108; *Lunn v. Thornton*, 1 Man., Gran. & Scott [Eng.] 379. The doctrine maintained in most of the cases was clearly stated in *Otis v. Sill*, and was, substantially, 'that a grant of goods not in exist-

ence, or which do not belong to the grantor at the time of the execution of the deed, is void, unless the grantor ratify the grant by some act done by him with that view, after he has acquired the goods; that an assignment of property to be acquired in future, if valid in equity, is only valid as a contract to assign when the property shall be acquired, and is not an assignment of a present interest in the property, and if enforced in equity, can only be enforced as a right under the contract, and not as a trust attached to the property as against the creditors of the assignor or mortgagor; that the mortgage of such subsequently acquired property can only be regarded as a mere contract to give further mortgage on such property, binding on the mortgagor personally, and the only remedy of the mortgagee on such contract is as a general creditor.'

"The broadest contrary doctrine was announced by Mr. Justice Story in *Mitchell v. Winslow*, 2 Story [U. S. C. C.] 630, in the following language: 'It seems to me a clear result of all the authorities that wherever the parties, by their contract, intended to create a positive lien or charge, either upon real or personal property, * * * whether it is then *in esse* or not, it attaches in equity as a lien or charge upon the particular property as soon as the assignor or contractor acquires a title thereto, against the latter and all persons asserting a claim thereto under him, either voluntarily or with notice, or in bankruptcy.' This has been followed by this court in the case of *Page v. Gardner*, 20 Mo. 508; in New York in the case of *Seymour v. Canandaigua & N. F. R. Co.*, 25 Barb. 305, in which *Otis v. Sill*, *supra*, was cited and distinctly disapproved; also in *Sillers v. Lester*, 48 Miss. 526; *Benjamin v. Elmira R. Co.*, 49 Barb. [N. Y.] 441; *Brett v. Carter*, United States district court of Massachusetts, reported in 3 Central Law Journal 286; *Morrill v. Noyes*, supreme court of Maine, reported in 3 Am. Law Reg. (n. s.) 18, 56 Me. 458; and in England in *Langton v. Horton*, 1 Hare 549; *Holroyd v. Marshall*, 9 Jur. (n. s.) 213; *Whitworth v. Gau-*

*gain,* 3 Hare 416; *Douglass v. Russell,* 1 Mylne & K. 488. The opinion of the court in *Morrill v. Noyes,* delivered by Davis, J., is an able review of the authorities, and states the doctrine more clearly and precisely than any other case to which our attention has been called. It does not recognize the validity of mortgages of mere contingencies, or sales or mortgages of property which 'the mortgagors might purchase if they should purchase any,' but the sale or mortgage must relate to property then in contemplation of the parties to be purchased or acquired by the vendor or mortgagor." In line with the adjudicated cases in the class led by *Mitchell v. Winslow* the supreme court of Missouri held the provisions of the lease operated to create a lien for the entire rent and not for installments as they fell due monthly, and gave that lien a precedence over the chattel mortgage made on the personal property after it had been placed in the hotel building.

By the above quotation having pointed out the conflict which exists, it remains now to indicate the group in which this court, by its opinions, has placed itself. In *Lanphere v. Lowe,* 3 Neb. 131, the judgment under consideration had been rendered by the district court over which Chief Justice LAKE was presiding. The opinion in this court was therefore expressed by but two judges, for whom GANTT, J., said: "Can a valid charge be made upon a thing not in existence? I think it cannot. It is a very ancient rule of law that a man cannot grant or charge that which he has not; and in *Jones v. Richardson,* 10 Met. [Mass.] 488, it is said that this 'is a maxim of law too plain to need illustration and which is fully supported by all the authorities.' (4 Bacon, Abridgment of the Law 514, Grants, D, 2; *Codman v. Freeman,* 3 Cush. [Mass.] 309; 2 Kent, Commentaries 703; *Head v. Goodwin,* 37 Me. 187; *Robinson v. Macdonnell,* 5 Maule & Selw. [Eng.] 228; *Chynoweth v. Tenney,* 10 Wis. 400.) This doctrine is applied to mortgages of goods which may be subsequently acquired by the mortgagee; it is equally ap-

plied to sales of personal property and rights of property. (*Chesley v. Josselyn*, 7 Gray [Mass.] 490; *Rice v. Stone*, 1 Allen [Mass.] 569.)"

In *Cole v. Kerr*, 19 Neb. 553, it was held that a mortgage executed, delivered, and properly recorded March 30, 1882, purporting to convey "40 acres of wheat, 30 acres of oats, now growing, 75 acres of corn, to be planted, and 50 acres of broom-corn, to be planted, tended, and delivered in Juniata," conveyed no title or lien upon the corn as against the levy of an execution of date November 25, 1882. The opinion of the court was delivered by Cobb, J., who said: "There is, to say the least of it, a great confusion of the authorities on the point being considered, but after a careful examination of those cited on either side in this case I have reached the conclusion that as a question of law the lien of a chattel mortgage of a crop of corn not planted at the time of its execution and delivery will not attach to the corn when it comes into existence until it is seized by the mortgagee, or until, in the language of a member of the court in the case of *Holroyd v. Marshall*, 10 H. of L. Cases 191, 'a new intervening act.' Until then it remains a mere license, and until acted upon it conveys neither a lien nor a right of property which the mortgagee can assert against a purchaser or execution creditor of the mortgagor. Presumptuous as it may seem to say so, I cannot agree to the proposition stated by Lord Hobart in the case cited by counsel for defendant in error, that the owner of the land, though he had not the future crop 'actually in view nor certain, yet he had it potentially.' While it is true, as he adds, that 'the land is the mother and root of all fruits,' the word 'potentially,' as defined by Craig, means 'in possibility, not in act, not positively; in efficacy, not in actuality.' With this definition in view it cannot be said that the mere ownership or possession of the soil carries with it the production of crops potentially. Soil alone does not produce crops of corn in this degenerate age, if it ever

did. It now requires, in addition to soil, seed and labor, both of man and beast, so that the proposition that a sale or mortgage of a crop of corn not yet planted carries with it a property in or lien upon such crop, to attach or come into efficacy without 'a new intervening act,' upon the crops coming into existence, carries with it the proposition that a man may mortgage his labor to be performed,—something which I never heard contended for in this country, but which is a right which, under the name of peonage, is recognized in our sister republic to the south of us. The true distinction, I think, is that indicated in 1 Sheppard's Touchstone, 241, in the enumeration of things which pass by grant, to-wit: 'Leases for years, be they present or future, wardships of tenants *in capita*, or by knight's service, trees, oxen, horses, plate, household stuff, and the like. Also trees, grass, and corn growing and standing upon the ground, fruit upon the trees, wool upon the sheep's back is grantable.' Doubtless the fruit on the trees, the grass in the meadow, and wool on the sheep's back may be granted without regard to the state of their growth or perfection, because in the due course of time nature, without the necessary assistance of new forces, will in the one case develop fruit, etc. But, as we have already seen, the mere soil, except with the assistance of other elements and forces, in the latitude of Nebraska will not develop crops of corn."

In *Johnson v. Walker*, 23 Neb. 736, the case of *Cole v. Kerr, supra*, was cited with approval as to the impossibility of mortgaging a crop of corn before it has been planted. In *Wagner v. Steffin*, 38 Neb. 392, there was under consideration the validity of a mortgage of date May 15, 1888, by the terms of which the mortgagee was to have a lien on all crops grown on certain premises. This mortgage was held valid, but there was no reference in the opinion to the actual or prospective condition of the corn when mortgaged, and in this respect we are not assisted by its date. The opinion was written by

POST, J., and, as he makes no mention of the crop not being planted, it could hardly have. been mortgaged before it was *in esse*, for we find that he, in *Steele v. Ashenfelter*, 40 Neb. 770, delivered the opinion of this court in which the doctrine of *Cole v. Kerr, supra,* was recognized and enforced as to personal property attempted to be mortgaged before possession of it had been acquired. Many of the cases attempt to make a distinction between legal and equitable rights under a mortgage of the nature of that just referred to, but this distinction was not recognized in *Steele v. Ashenfelter, supra,* which was an action by a receiver for the possession of property taken under an execution, and it was expressly held that the receiver had no rights which could be enforced by a court of equity.

From this review of cases it is clear that in this action the clause in the lease whereby there was attempted to be provided a lien to become operative against personal property afterward to be brought upon the premises, but which was not yet capable of description because not segregated from stocks of goods of which it was a part, was void as against the rights of appellants hereinbefore designated. As the rights of parties in this court cannot be determined upon the record as it stands, there will be no decree ordered or entered at this time, but the judgment of the district court will be reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.