GEORGE SPORER v. THOMAS MCDERMOTT ET AL.

FILED JULY 3, 1903. No. 12,203.

1. Trial: DEMURRER. The overruling of a demurrer does not prevent a finding, after the evidence has been taken, that there is no cause of action.

2. Agreement to Mortgage Crops Not Sown: SPECIFIC PERFORMANCE. An agreement to execute, after they are growing, a mortgage upon crops, may be enforced specifically in equity if sufficiently definite in its terms and clearly established, and the situation of the parties and property is such that justice and equity call for such a remedy.

3. ———. It is no objection to such an agreement that the crops referred to were not in being when it was made.

ERROR to the district court for Saunders county: SAMUEL H. SORNBORGER, DISTRICT JUDGE. *Reversed with directions.*

*J. K. Van Demark* and *L. E. Gruver,* for plaintiff in error.

*John H. Barry, contra.*

HASTINGS, C.

This is an action brought by the plaintiff to obtain the specific performance of a rent contract to secure $275, the rental of a farm for one year from March 1, 1900, by a chattel mortgage upon the crops raised upon the farm. The petition includes two causes of action, and alleges removal of certain fixtures from the place, and asks an

injunction against any disposition of the crops or the removal of the fixtures.

The court finds, as to the latter, that they belonged to defendant, and plaintiff had no interest in them. Of this finding no complaint is made. The court finds, as to the claim for specific performance of the agreement to mortgage and the enforcement of the lien of such mortgage, that plaintiff owned the land; that he leased it to the defendant, McDermott, for one year from March 22, 1900; that the latter joined in the execution of the lease alleged, and knew the contents of it; that defendant raised on the place the eighty acres of corn on which the lien was sought; that he sold the corn to the other defendant, with the purpose of defeating plaintiff's lien and not in good faith; that defendant, Hotchkiss, before the purchase of the corn or the payment for it, knew of defendant's intention and fraudulent purpose, and knew that plaintiff claimed a lien on the corn for the rental of the land, and is not entitled to be considered an innocent purchaser; that the agreed rental was $275, payable February 1, 1901; that plaintiff never obtained possession of the property, and that defendant at all times repudiated and denied any liability under the agreement to mortgage the crops, and was at the time of the commencement of the action wholly insolvent. The court found as conclusions of law: First, that the agreement in the lease relating to the mortgage of crops was too indefinite to warrant a decree of specific performance; second, that it was unenforceable, because the property was not in existence when the lease was made; third, that the agreement carried no lien; fourth, that the plaintiff was entitled to no specific performance of the alleged agreement to execute a mortgage, and dismissed plaintiff's action.

Subsequently the second and third findings were stricken out, in passing upon a motion for a new trial, but the motion itself was overruled.

It should be stated that to the plaintiff's petition a demurrer was filed, on the ground of want of jurisdiction of

defendant's person.; want of jurisdiction of subject matter of the action; and that the petition did not state facts sufficient to constitute a cause of action. This demurrer was overruled by the court, and plaintiff in error now says that such action is not consistent with the rendering of a judgment for dismissal, after finding substantially all the facts alleged to be true; and that the decree is wrong because of this ruling upon the demurrer.

It does not seem necessary to discuss this contention at any length. Nothing is cited to sustain it except the case of *Marvin v. Weider,* 31 Neb. 774, *Dolen v. Buchanan,* 43 Neb. 854, and *Kleckner v. Turk,* 45 Neb. 176. The first of these cases merely remarks that, in districts having more than one judge, any ruling made by one of them is to be respected by any other judge trying the same case. It finds the several rulings first entered to have been right, and reverses the subsequent action as being both wrong and contrary to the first ruling. The other two cases incidentally refer to this one with approval, in finding that they presented no occasion for applying the doctrine. None of them go to the length of holding that a ruling on a demurrer, in the same court, involves necessarily an adherence to that ruling throughout the case, if it is found to be wrong. It should merely be recognized as having been made and valid, until properly set aside. The ruling upon the demurrer, surely, can not conclude a trial court from passing upon the evidence in any way, and, in this instance, two causes of action are found against by the trial court, and no complaint is made as to one of them. The alleging of this cause of action may have led to the overruling of the demurrer.

The real question in this case arises upon the first and fourth conclusions of law, as found by the court when applied to the agreement in question; that agreement is as follows:

"Sporer hereby leases the southeast quarter section 32, town 14, R. 5, Saunders county, Nebraska, for a period of one year from the first day of March, 1900, on the following conditions:

"Two hundred and seventy-five (275) dollars, payable on the 1st day of Feby., 1901, drawing ten per cent. interest after maturity, said note to be secured by a chattel mortgage on all the crop planted and sown on the above described land, except a small parcel of land to be planted to corn containing one acre, more or less, and a garden patch for vegetables, said mortgage to be executed as soon as crops are planted on or about the 10th day of June, 1900. Thomas McDermott agrees to take good care of dwelling house, other houses, barns, sheds, granaries, pens, cribs and fences and return the same in as good condition as they now are, wear and tear and accidents excepted, and to receive them as they now are, except three dollars repair on the dwelling house.

"Signed this 22d day of March, 1900.

"GEO. SPORER,

"In presence of          THOMAS X MCDERMOTT.
"J. K. VAN DEMARK."          mark.

As there was no complaint or objection on the part of the defendants to any of the trial court's findings, and they are seeking to uphold the decree, they are concluded by them; these findings show that the farm was rented to defendant, McDermott, in accordance with this agreement, that the agreement was for $275 rent, and that it was duly executed by McDermott. In all these particulars, the contract is rendered sufficiently definite, by performance, by each of the parties. The only question is, whether or not the contract was definite and precise enough to call for its specific performance in the single matter of mortgaging the crop. The trial court, by implication, in its original two findings, had determined that there was an agreement on the part of the defendant to mortgage this crop. It distinctly ascertained the amount of that mortgage and when it was payable; the agreement is certainly specific as to both what was to be secured and how, and upon what the security was to be given. The status of the property as found by the court clearly warrants the interposition

of a court of equity, if the agreement is plain and distinct enough to be specifically enforced, in the particular respect in which performance was refused. The doctrine stated in 3 Parsons, Contracts (9th ed.), 354, cited by plaintiff in error, seems clearly applicable:

"The contract of which performance is sought must be clearly proved, and its terms should be so specific and distinct as to leave no reasonable doubt of its meaning. But the court is bound by no technical rules in this respect. Nor does it greatly regard the form of the contract."

It seems clear that plaintiff was entitled to have his mortgage, and to its enforcement as against the defendant, McDermott, and his fraudulent grantee, Hotchkiss.

It is, however, claimed by defendants in error that the two findings, as originally made by the trial court, that this agreement to mortgage a crop not yet planted, was wholly void, is the true rule of our state, and that the decree should be upheld, notwithstanding the trial court afterwards struck out those findings. This is asked on the ground that the decree is right, and any want of consistency in the findings and decree would be error without prejudice.

It is true that there are several cases cited by the defendants in error from this court, holding that a mortgage upon property not then in being creates no lien. None of these decisions, however, go so far as to say that an agreement thereafter, and when the property shall be in existence, to mortgage it, is invalid, and we do not see how such a rule of law could be sustained. An executory contract for the sale at some time in the future of property not then in existence is entirely valid; indeed, the right to make it is almost essential to the carrying on of many manufacturers' and producers' business. It would seem that if an agreement, at a future date to transfer absolutely the title to property thereafter to be produced, is good and valid, an agreement to transfer such title conditionally, and by way of mortgage security, would be equally good and valid, notwithstanding that the property

was not at that time in existence. Of course, if the property never should come into existence, there could be no recovery of damages or of specific performance of the agreement to mortgage it. But where, as in this case, it did come into existence, and all of the circumstances contemplated by the agreement arose, it would seem that there could be no doubt of its validity. In the recent and carefully considered case of *Battle Creek Valley Bank v. First Nat. Bank*, 62 Neb. 825, contracts of sale and of mortgage are distinctly placed upon the same footing. It is, of course, necessary in this state, as there set forth, that, in order to create a legal right in a legal thing, there must be a legal conveyance of that thing, while in existence. In a court of law an executory contract of sale conveys no right to the thing itself, but in a court of equity, and in an action for specific performance, the legal doctrine would seem out of place. The action itself is brought to supply and obtain performance of the intervening act, which is necessary to convert a mere contract right against the promisor, into an actual lien against the thing itself. As against such an action, where the facts pleaded and proved rendered this remedy appropriate, and even necessary, it would seem absurd to say that the legal right does not yet exist. This action is brought expressly to enable plaintiff to acquire it when inequitably refused. It is held, on good authority, to apply to contracts relating to things not then in being. 3 Pomeroy, Equity Jurisprudence (2d ed.), secs. 1236, 1237.

It is not necessary, however, in this case to decide whether or not such an executory agreement is enforceable generally. It seems clear that it must be so as to crops on land where the agreement is to secure rent. At the place in Pomeroy's Equity, above cited, after stating that a sale or mortgage of things not in being gives no legal title, he excepts things which have a potential existence, and in the note cites crops to be grown on lands demised in consideration of such an agreement. A right in such crops under such an agreement, has been so often upheld that it

is not necessary to cite cases. Examples are *Arques v. Wasson,* 51 Cal. 620, 21 Am. Rep. 718, and *Apperson & Co. v. Moore,* 30 Ark. 56, 21 Am. Rep. 170.

It appears that the corn crop was sold to one who was entirely aware of the agreement and of the plaintiff's claim under it, and that it brought about $800.

It is recommended that the decree of the district court be reversed and the cause remanded with directions to enter a decree for the plaintiff for $275 and interest at seven per cent. per annum from February 10, 1901, and costs.

DAY and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed and the cause remanded with directions to enter a decree for the plaintiff for $275 and interest at seven per cent. per annum from February 10, 1901, and costs.

REVERSED.

HOLCOMB, J., dissenting. (Filed September 17, 1903.)

The majority opinion in this case provides an effectual landlords' lien law, in the absence of statutory authority, and as I view the former utterances of this court, runs counter to a long line of decisions beginning with *Lanphere r. Lowe,* 3 Neb. 131. Of course it can make no difference with the tenant whether provisions for a lien in favor of his landlord for rents due are incorporated in his contract of lease or become a part of it by virtue of a statutory enactment. In either event, all of his crops, even though produced in the future, are pledged for the payment of rent and he can neither use nor dispose of the smallest part thereof, lawfully, until the demands of his landlord are satisfied. If all the prior decisions of this court are to be thus brushed aside, it seems to me that they should be squarely repudiated, so that there may be no ground for confusion on the part of the bench and bar, or of the laity.

It is said in the opinion formulated by the commissioner, which is adopted by the majority of the court, that an action for specific performance, for the purpose of establishing a lien on property not *in esse* at the time of the execution of the contract, is held, on good authority, to be maintainable in a court of equity; citing as authority in support thereof 3 Pomeroy, Equity Jurisprudence (2d ed.), secs. 1236, 1237. This summary disposition of the question, involves no great amount of labor, and, possibly, is the best that can be made of a very troublesome proposition. But it is to be noted that in almost every decision of this court on the subject, a conflict in the authorities is recognized. As is said in *Cole v. Kerr*, 19 Neb. 553:

"There is, to say the least of it, great confusion of the authorities on the point being considered."

In the language of another who has wrestled with the question:

"One might write a volume, if inclined, to review all of the adjudged cases on the subject." *New Lincoln Hotel Co. v. Shears*, 57 Neb. 478, 483.

Or, as stated by another:

"The question thus presented is one upon which the authorities are by no means harmonious." *Steele v. Ashenfelter*, 40 Neb. 770.

My own views of the subject are stated at some length, with numerous citations of authorities, in *Brown v. Neilson*, 61 Neb. 765. The mere assertion, in the majority opinion, that the authorities sanction the enforcing of an equitable lien on property mortgaged, or agreed to be mortgaged, which at the time is not in existence, in view of the conflict of authority and in the face of the doctrine accepted and adopted by our own prior decisions, is neither satisfactory nor convincing to me.

An attempt is made in the opinion to distinguish between the case at bar and the case of *Battle Creek Valley Bank v. First Nat. Bank*, 62 Neb. 825, which is too subtle for my comprehension. The two cases are in sharp conflict, and the attempted distinction appears unsound

both on principle and in logic.  On principle, what distinction can there be drawn between an executory contract to give a mortgage on property not *in esse* and provisions in a mortgage in form, which, by its terms, undertakes to pledge property to be acquired in the future?  Both are, so far as such future acquired property is concerned, at least, executory contracts, resting for a right of enforcement upon the same legal and equitable principles, and all the authorities I have examined so regard and treat them.  In those jurisdictions where such contracts are specifically enforced, both are held to create no legal interest in the property attempted to be incumbered, and that an equitable lien only attaches when the property comes into existence, which will be specifically enforced by a court of equity.  The form or particular nature of the agreement which it is intended shall create a lien, say the text-writers, is not material, for equity looks at the final intent and purpose rather than at the form, and an equitable lien will follow where it appears that such was the intent of the parties.  The intent to give a security being clear, equity will treat the instrument as an executory agreement for such security.  In *Apperson & Co. v. Moore,* 30 Ark. 56, cited in the majority opinion, is collated a number of authorities, all of which recognize a mortgage of property not *in esse,* and an agreement to mortgage such property as being controlled by the same equitable principles.  If no reasonable distinction can be drawn between a mortgage of property not in existence and an agreement to give such a mortgage, which I contend can not, then the majority opinion is in conflict with the very case it seeks to distinguish and approve.  It should be borne in mind that under our reformed system of administering justice the forms between actions at law and suits in equity are abolished.  Under the blending of the two systems, it becomes immaterial what the form of the action is.  Relief is to be administered, whether legal or equitable, according to the facts as disclosed by the pleadings and the evidence.  The distinction, therefore, which

is sought to be made can have no place in our practice. Whatever relief either of the parties is entitled to, should be awarded regardless of the distinctions formerly existing between actions at law and proceedings in equity. *Steele v. Ashenfelter, supra. Alter v. Bank of Stockham,* 53 Neb. 223.

Again it is stated, in the opinion, that an equitable action to enforce a lien on such property by virtue of an executory contract, is itself brought to supply and obtain performance of "the intervening act" which is necessary to convert a mere contract right against the promisor into an actual lien against the thing itself. My conception of the true rule governing the rights of parties under such an agreement is and has been altogether different. I had supposed that "the intervening act" spoken of by the authorities regarding such executory contracts to make them effective, was the voluntary act of the promisor, the promise being, at most, until such intervening act took place, a mere license. It had not occurred to me that a coercive decree of a court of equity could supply the place of this intervening act, nor am I yet convinced that it rightfully can. Lord Bacon's maxim from which the rule is deduced, is to the effect that when the grant of a future interest is invalid, yet a declaration precedent may be made which will take effect on the intervention of some new act. The "new act" must, however, in all cases, come from the grantor. In Broom, Legal Maxims, *482, it is said:

"A power contained in an indenture to seize future crops, if unexecuted, would be of no avail against an execution levied, as giving no legal or equitable title to any specific crops, yet, if the power be subsequently executed by the grantee taking possession of the then growing crops, the seizure will be good as against an execution afterwards levied; for the act done by the grantor is sufficient to give effect to the antecedent declaration within the scope and meaning of Lord Bacon's maxim."

The authorities also hold that the license contained in a mortgage conveying future acquired property, from

which the right to take possession of it after it comes into existence arises and which when done satisfies the rule as to the performance of the new intervening act, is revocable at the will of the grantor and can not be executed against his will. *Chynoweth v. Tenney,* 10 Wis. 341; Jones, Chattel Mortgages (3d ed.), sec. 165. If the license is revocable at the will of the grantor; if the intervening act must be voluntarily performed by him, I can not understand how it may properly be said he may be coerced in doing that which is to be done voluntarily, or that he may be denied the right to, at will, revoke a license by which the same act may be accomplished. It is quite true that if this court should repudiate all that it has heretofore said on the subject, and hold to the doctrine, as is held in some jurisdictions, that the mortgaging of property not in existence, or agreeing to mortgage the same, creates an equitable lien specifically enforceable in a court of equity when the property comes into being, then the opinion is right; but I maintain that in this state, according to all our decisions, such contracts create neither a legal nor equitable lien, until, as the books say, there has been "a new intervening act," and, consequently, the grantee in such an instrument has no standing either in a court of law or of equity. *Brown v. Neilson, supra,* and the authorities there cited.

The right to enforce the lien, in the case at bar, on the crops of the grantor which were planted and grown long after the execution of the instrument which is the basis of the action, can be justified only on the ground that the written instrument of lease operated as a reservation of title, or an interest therein in favor of the landlord of the demised premises, which can be defeated only by a payment of the rent due, and this, I understand is the view entertained by my associates, and which led them to adopt the opinion prepared by the commissioner. I readily concede that a landlord may retain and reserve to himself an interest in or title to all the crops grown on the premises which he has leased, by suitable stipulations in a lease contract with his tenant. He may reserve to himself a third

or a half of the crop for his share of the rents; and the title thereto would be his absolutely, to the exclusion of any right which might be asserted by the tenant; or he might retain an interest in, and title to, the crops until the rental was paid, by making an agreement in the nature of a conditional sale; but as I construe the instrument which is made the basis of the present action, nothing of this kind was attempted. What was done, was to lease to the tenant the premises for a cash rental, payable at a stipulated time, each year, to be evidenced by a note which was to be secured by a chattel mortgage on all the crops planted and sown on the leased land. This, I construe to be simply an agreement for the lease of the premises at a cash rental, with the further agreement that the tenant, to secure the rental due each year, will mortgage property which at the time was not in existence, either actually or potentially, and, for that reason, the contract to mortgage created neither a legal nor equitable lien on the property agreed to be mortgaged after it came into existence. The case at bar is to be distinguished from *Brown v. Neilson, supra;* for, in the latter case, there was no attempt to mortgage or to agree to mortgage, in specie, the crops which were raised on the demised premises, but simply a provision that all property, which should be brought on the premises during the existence of the lease, should be held as security for the amount to be paid as rental. There is nothing in that contract indicating an intention to reserve to the landlord any interest whatever in the crops grown on the demised premises. The true reason and sound doctrine under which the landlord is permitted to hold the crops grown on the leased premises, for the rents due, is stated quite accurately and succinctly in *De Vaughn v. Howell,* 82 Ga. 336, 14 Am. St. Rep. 162. Say the court:

"Here was a landlord who made a rent contract with his tenant, and the tenant not only agreed to sell the crop, but went *further* and *agreed that the title to all the crops made on the farm should remain in the landlord* until the landlord was fully paid for his rent and all advances.

\* \* \* The reasoning upon which our decisions go is, that the owner of the land being also the owner of the fruits or products of it, in parting with the use of it to another, may make such conditions and reservations in relation to the land itself or the products grown from it as he chooses, instead of parting with the full right. The principle is the same as that upon which conditional sales of personal property are upheld."

I find nothing in the leasehold agreement, in the case at bar, from which it seems fairly inferable that the landlord, Sporer, reserved any interest in the crops grown on the land he leased to McDermott, or title thereto, and certainly there is an entire absence of any element of a conditional sale of personal property. The majority opinion appears to me to be in direct and irreconcilable conflict with the case of the *New Lincoln Hotel Co. v. Shears, supra.* It is to be observed that the lease of the hotel, in the case referred to, contained a provision that it should operate as a lien on all the personal property of the lessee, which should be placed in the hotel on the leased premises, to secure payment of rent, whether then acquired or not. The lessees afterwards mortgaged the property, subject to this attempted lien, but with notice to the mortgagees of the provisions contained in the lease. It was there held that the mortgagees were entitled to a superior lien, and that the question of notice in no manner affected their rights. The same rule should, I think, be applied in the present case. I am of the opinion that Sporer, the landlord, by his agreement, obtained neither a legal nor an equitable lien or interest in the crops raised in the future on the demised premises, nor was there any reservation, interest or title therein in the landlord; and that the judgment creditor who had levied on the property was entitled to it as against the former; and the judgment of the district court should, therefore, be affirmed. Hence, I dissent.