HARLAN EDMINSTER, AND OTHERS, PLAINTIFFS IN ERROR, V. JONATHAN HIGGINS, DEFENDANT IN ERROR.

| 6 | 265 |
|---|---|
| 12 | 133 |
| 22 | 666 |
| 22 | 667 |
| 6 | 265 |
| 26 | 86 |
| 6 | 265 |
| 40 | 751 |
| 6 | 265 |
| 55 | 250 |

1. **Vendor's Lien.** A vendor of real estate, upon an absolute conveyance thereof by deed, has no lien on the land so conveyed for such portion of the purchase money as remains unpaid.

2. ———: ——— The policy of our law is to discourage secret liens, and to require all instruments affecting the title of real estate to be entered of record.

3. ———: ——— The doctrine that a vendor has a lien on the land conveyed for the purchase money remaining unpaid, is repugnant to our statutes in relation to real estate, and is no part of the law of this state.

4. **Conveyance:** REGISTRATION. The proper registration of a conveyance operates as constructive notice to all subsequent purchasers of any estate, legal or equitable, in the same property; and such notice given by the record is as effectual in law as personal notice.

ERROR from the district court of Nemaha county.

The petition of the plaintiff in the court below, Higgins, states that on January 1, 1871, he sold and absolutely conveyed with full warranties, the premises described in the petition to William Adams, and took two promissory notes for the unpaid purchase money. That on April 17, 1873, said William Adams died, leaving the defendants, except Edminster, his heirs, and that said Edminster was duly appointed administrator. That no proceedings had ever been had to collect the notes, and prays a vendor's lien and sale of the premises.

Defendants demurred generally. The court overruled the demurrer, and the defendants below, as plaintiffs in error, bring this petition in error to reverse such judgment.

*J. H. Broady*, for plaintiff in error.

Although the doctrine of vendors' liens was established in England for a reason now obsolete, yet it has always been repudiated by many of the foremost states of the Union, and the tendency of the later decisions of this country is to repudiate it altogether as incompatible with our states policy and jurisprudence and the business world of to-day. Gen. Stat., p. 881, sec. '50. *Simpson v. Mundee*, 3 Kan., 173. *Kauffelt v. Bower*, 7 Serg. & Raw. (Pa.), 64. *Semple v. Burd*, Id., 286. *Cameron v. Mason*, 7 Ired., Eq., 180. *Philbrook v. Delano*, 29 Maine, 410. *Bayley v. Greenleaf*, 7 Wheat., 47. *Gilman v. Brown*, 1 Mason, 192.

*W. T. Rogers*, for defendant in error.

Maxwell, J.

The doctrine of a vendor's lien appears to have had its origin in the civil law, from which it was borrowed and became a part of the equity jurisprudence of England. *Mackreth v. Symons*, 15 Vesey, 327. By the

·civil law the vendor of property sold had a privilege, or right of priority of payment, in the nature of a lien on the property for the price for which it was sold, not only against the vendee and his representatives, but against his creditors, and also against subsequent purchasers from him. For although the title and dominion to the thing sold passed, yet there was an implied condition that the vendee should not be master of the thing sold unless he had paid the price, or had otherwise satisfied the vendor in respect thereof. Story's Eq. Juris., Sec. 1221. Dig., Lib. 18, title 1, sec. 19. And the rule was equally applied to the sale of movable and immovable property, and equally applied whether there had been a delivery of possession or not. Id.

The principle upon which the lien is sustained is, that where a person has obtained the estate of another he ought not in conscience, as between them, be allowed to hold it without paying the full consideration therefor. *Mackreth v. Symons*, 15 Vesey, 340. Story's Eq. Juris., 1219. The doctrine that the vendor, upon an absolute conveyance of land, where no security has been taken, has a lien upon the land sold for the unpaid purchase money is well established in England. And the decisions of her courts on that question have been followed in the supreme court of the United States, and in the courts of last resort of many of the states of the Union. The question is now presented to this court for the first time. It is our duty therefore to examine the grounds on which it rests, and the reasons assigned for its support, and see how far they are applicable to this state, under our laws.

Blackstone, after describing the principal kinds of deeds by which real estate might be conveyed in England, says: " These are the principal species of deeds or matters *in pais* by which estates may be conveyed or at least affected. Among which the conveyances to uses

are by much the most frequent of any; though in these there is certainly one palpable defect—the want of sufficient notoriety, so that purchasers or creditors cannot know with any absolute certainty what the estate and the title to it in reality are, upon which they are to lay-out or lend their money. In the ancient feudal method of conveyance (by giving corporal seisin of the lands) this notoriety was in some measure answered; but all the advantages resulting from thence are now totally defeated by the introduction of death-bed devises and secret conveyances; and there has never yet been any sufficient guard provided against fraudulent charges and incumbrances since the disuse of the old Saxon custom of transacting all conveyances at the county court, and entering a memorial of them in the chartalary or ledger book of some adjacent monastery, and the failure of the general register established by King Richard the First, for the starrs or mortgages made to Jews in the capitula de judaeis, of which Hovenden has preserved a copy." 2 Blacks. Com., 342: "Conveyance by *bargain* and *sale* in order to pass a freehold, under the provisions of 27 Henry VIII, was required to be made by indenture and enrolled within six months in one of the courts of Westminster Hall or with the *custos rotulorum* of the county, but registration is entirely distinct from that." 3 Wash. on Real Property, 313. It is well settled in England that the mere registration of a conveyance will not be deemed constructive notice to subsequent purchasers. *Wyatt v. Barwell*, 19 Ves., 435. *Jollard v. Stambridge*, 3 Ves., 477. Story's Eq. Juris., Sec. 402. In this state, however, the proper registration of a conveyance operates as constructive notice to all subsequent purchasers of any estate, legal or equitable in the same property.

Section sixteen, chapter 61, Genl. Statutes, 875, provides that: "All deeds, mortgages, and other instruments of writing, which are required to be recorded,

shall take effect and be in force from and after the time of delivering the same to the clerk for record, and not before, as to creditors and subsequent purchasers in good faith without notice. And all such deeds, mortgages, and other instruments shall be adjudged void as to all creditors and subsequent purchasers without notice, whose deeds, mortgages, and other instruments shall be first re- corded; *Provided*, That such deeds, mortgages, and other instruments shall be valid between the parties."

Section fifty, Genl. Stat. 881, provides that: "Every conveyance of real estate shall pass *all the interest of the grantor therein,* unless a contrary intent can be rea- sonably inferred from the terms used."

The obvious intention of the registry acts is to give notice to all persons who may have occasion to ascertain whether there has been any prior incumbrance or conveyance of any real estate. And the notice given by the record is as effectual in law as personal notice to the party to be affected by it. The policy of our law is to discourage secret liens, and to require all instruments affecting the title of real estate to be entered of record. The law thus places the means within the reach of every one desiring to purchase real estate of ascertaining the condition of its title.

What is a vendor's lien? We are told that it is an equitable mortgage for the amount of purchase money of real estate remaining unpaid. But an equitable mort- gage grows out of an agreement that a lien shall be cre- ated, while a vendor's lien in a case like the one at bar arises, if at all, without a contract, and against the express terms of the deed. Neither is it in the nature of a trust. There is no agreement of any kind that the land shall he held as security for the payment of the purchase money. This is a case where credit was de- liberately given, trusting to the solvency of the debtor, and notes, payable in the future, were received by the

vendor for that portion of the purchase money on which credit was given. It is difficult to perceive how the land can be charged with a lien not contemplated by the parties. The case would be entirely different if the sale had been for cash, and the deed had been delivered before payment of the consideration. Then the vendee becomes a trustee for the purchase money, and the estate purchased is charged with the trust in the hands of any one except an innocent purchaser without notice.

In *Gilman v. Brown*, 1 Mason, 192, Story, J., says: "The lien of a vendor for the purchase money is the mere creature of a court of equity, which it moulds and fashions according to its own purposes. It is, in short, a right which has no existence until it is established by the decree of a court in the particular case, and is then made subservient to all the other equities between the parties."

Blackstone says: "Hard is the common law still subsisting, that land derived or descending to the heir shall not be liable for simple contract debts of the ancestor or devisor, although the money was laid out in *purchasing the very land*." Blackstone Com., Book III, 430.

This provision of the common law doubtless had great influence in leading the court of Chancery of England to adopt the doctrine of vendor's lien from the civil law to prevent a failure of justice. But this doctrine can have no application in this state, where debts are a charge upon the lands of decedents, and where the estate descends or is devised subject to such debts.

We are clearly of opinion that the doctrine of a vendor's lien in a case like the one at bar is repugnant to our statutes in relation to real estate, and is therefore no part of our law. It follows from these views that the judgment of the district court must be reversed and the cause dismissed.

JUDGMENT ACCORDINGLY.