Gillilan v. Kendall & Smith.

---

JOHN J. GILLILAN, PLAINTIFF IN ERROR, v. KENDALL & SMITH, DEFENDANTS IN ERROR.

[FILED MAY 2, 1889.]

1. **Mortgage**: CHATTELS: LIENS: GROWING CROPS. A chattel mortgage upon growing grain, is not constructive notice to third parties of a mortgage on the same grain thereafter lawfully placed in crib or bin; and a dealer in grain who in good faith in open market purchases such grain from the mortgagor, and receives it at his warehouse, will take it free from the lien of the mortgage.

2. ———: TITLE OF MORTGAGOR. The mortgagor of chattels, until foreclosure, possesses a beneficial interest in the property mortgaged, and will convey a good title by a sale of such property to one who purchases in the open market in good faith and without notice, actual or constructive, of the mortgage.

3. ———: ———: CASE STATED. One A. executed a chattel mortgage to B., upon seventy-five acres of growing corn. This corn, apparently, was gathered by the mortgagor, with the knowledge or consent of the mortgagee, and placed in cribs or piles on the farm, and a portion afterward sold in open market by the latter. In an action by the mortgagee against the purchaser to recover the value of the corn, *held*, that a mortgage upon a growing crop is not notice to third parties of a mortgage upon corn husked and placed in cribs or piles.

ERROR to the district court for Lancaster county. Tried below before CHAPMAN, J.

*Sawyer & Snell,* for plaintiff in error, cited: Herman on Chattel Mortgages, secs. 81, 178; *Cool v. Roche et al.,* 20 Neb. 550; Jones on Chattel Mortgages, second edition, sec. 69; Boone on Mortgages, sec. 267.

*C. E. Magoon,* and *C. O. Whedon,* for defendants in error, cited: Jones on Chattel Mortgages, sec. 481; *Kreuzer v. Cooney,* 45 Md. 582; *Hart v. Ten Eyck,* 2 Johns. Ch. 62, 108; *Robinson v. Holt,* 39 N. H. 557; *Hamilton v. Rogers,* 8 Md. 301.

MAXWELL, J.

This is an action by the plaintiff against the defendants, to recover for certain growing corn mortgaged by one Ashton to him, and a portion of which was gathered and sold to the defendants. On the trial the plaintiff recovered for the amount due Ashton upon the corn so sold. The plaintiff contends that he is entitled to recover for all the corn sold by Ashton to the defendants, although they had already paid Ashton therefor.

The facts are substantially as follows: One Ashton gave two chattel mortgages to the plaintiff in error, to secure payment of three of his promissory notes — one in the sum of $61.30, another in the sum of $225, and the third in the sum of $44.50 — which chattel mortgages covered the crop of corn which was growing upon the lands owned by the plaintiff, viz., the west half of section thirty, township eleven, range five, in Lancaster county. These chattel mortgages were duly filed for record in the office of the county clerk on the 3d day of July, 1885, and the 7th day of September, 1885, respectively. During the months of November and December, in the year 1885, the said Ashton

gathered and sold, without the knowledge or consent of Mr. Gillilan, a portion of the matured crop of this corn to the defendants, Kendall & Smith, who purchased the same in open market at their elevator in Malcolm, through their agent John Carpenter. Kendall & Smith are grain buyers at Malcolm, and it was admitted at the trial that they had no knowledge of Mr. Gillilan's lien upon the corn so purchased by them, except such constructive notice as the filing of the chattel mortgage gave them.

The plaintiff introduced the notes in question and the chattel mortgages securing the same, with proof that they were duly filed, and also testimony tending to show that the defendants had purchased from Ashton about 985 bushels of corn, and that such corn was worth, in the market at Malcolm, at the time stated, from nineteen to twenty-one cents per bushel. There is no testimony tending to show the entire quantity of corn produced by Ashton on the land of the plaintiff in section thirty, nor what portion of the crop, if any, Ashton was to deliver to the plaintiff for rent. For ought that appears, the amount of corn still remaining on the farm is sufficient to satisfy the mortgages in question.

The court instructed the jury as follows: "A party taking a chattel mortgage upon growing corn, in order to preserve his lien, as against innocent purchasers, is bound to see that when the corn is gathered, such notice is given to the public of his lien, by keeping the same separate and unmixed with other corn, as will prevent innocent parties from purchasing such corn. And in this case if the jury believe from the evidence that the plaintiff, after the execution of the mortgages offered in evidence by him, did nothing more than to file his mortgages in the office of the county clerk, and allowed the corn to become mixed with other corn, and if the jury further believe from the evidence that the defendants without actual notice of the existence of these mortgages purchased the corn, or some portion of

it, at their elevator in the town of Malcolm, in open market, then the plaintiff cannot recover, and your verdict will be for the defendant."

To this instruction the plaintiff excepted, and now assigns the same for error.

At law, a chattel mortgage passes the legal title in the property mortgaged to the mortgagee, although the mortgagor retains an interest in the property, and may redeem the same at any time before a sale under a foreclosure of the mortgage. In other words, a chattel mortgage is a security in which the legal title to the property mortgaged passes to the mortgagee, but in which the mortgagor retains a beneficial interest. Necessarily, additional labor must be expended on a growing crop to harvest and care for the same. If the mortgagee intrust this labor to the mortgagor, he, to that extent, makes him his employe. If the entire property in the grain had passed to the mortgagee on the execution of the mortgage, then it would be the business of the mortgagee to gather and care for the crop, and if he failed to do so, it would go to waste. Where, therefore, the mortgagor remains in possession and is permitted to gather the crop, it will be presumed that it was with the consent of the mortgagee. Now suppose that the security is considerably more than sufficient to pay the debt secured, and is the principal means possessed by the mortgagor for paying ordinary debts, and the means also of feeding his stock, and that such mortgagor is feeding his stock from such grain, and selling portions of the same to meet his necessary expenses, and these facts are known to the mortgagee, or he has knowledge of facts sufficient to put him upon inquiry: he certainly can not follow the grain and compel the party who has purchased and paid for the same in open market, to again pay him for such grain; nor could he claim a lien upon the stock for the grain used to feed it. If the mortgagor was a farmer, and the grain mortgaged included all that he possessed, and it was the intention of

the parties that he should continue in the use of the grain for feed or other necessary purposes about the farm as before the execution of the mortgage, it would not be a breach of the condition to carry out such intention, and the consent of the mortgagee may be implied; and so that the security shall remain sufficient, the mortgagee would have no cause of complaint. A mortgage of growing crops does not necessarily imply a mortgage of the same grain gathered and placed in a granary or crib — at least so far as constructive notice to be derived from the filing of a mortgage is concerned. The lien as between the parties continues, no doubt, but our statutes do not favor secret liens, and this court has so declared in a number of cases. (*Edminster v. Higgins*, 6 Neb. 265; *Rhea v. Reynolds*, 12 Id. 133.) A mortgage, therefore, of growing grain is not notice of a mortgage on grain in a crib or bin, when it has been lawfully placed there by the mortgagee or by the mortgagor with his consent. If wrongfully or unlawfully removed, the rule probably would be different.

At common law the purchaser of goods in market *overt*, if he acted in good faith, ordinarily was protected. Blackstone, Vol. II, 449, says: "But property may also, in some cases, be transferred by sale, though the vendor hath none at all in the goods; for it is expedient that the buyer, by taking proper precautions, may at all events be secure of his purchase; otherwise all commerce between man and man must soon be at an end. And therefore the general rule of the law is, that all sales and contracts of anything vendible, in fairs or markets *overt*, (that is, open,) shall not only be good between the parties, but also be binding on all those that have any right or property therein. And for this purpose, the Mirror informs us, were tolls established in markets, viz.: to testify the making of contracts; for every private contract was discountenanced by law; insomuch that our Saxon ancestors prohibited the sale of anything above the value of twenty pence, unless in open

market, and directed every bargain and sale to be contracted in the presence of credible witnesses."

It is not the policy of the law to extend the doctrine of constructive notice to cases where the change in an article mortgaged, made with the consent of the mortgagee, will fail to put a purchaser upon inquiry as to a claim held by him on the property. Thus a mortgage of clay in the bank would not be notice to a purchaser of brick manufactured from such clay; nor of wool growing upon sheep, of a lien upon the cloth manufactured therefrom. If the cases supposed differ from that under consideration, it is only in degree. In the case at bar, a large amount of additional labor was required to husk and gather the corn and prepare it for market.

If the mortgage lien continues as notice to third parties after such change in the condition of the crop, why may not the mortgagee follow the grain to Chicago, New York, or, in case of its shipment to England or France, to the ports of either country? No one will contend for such a rule; yet if the first purchaser is chargeable with notice of a secret lien, why is not the second, third, or more remote purchaser? The more salutary rule, no doubt, is to require the mortgagee to look after his security, and if a change is made in its character, to see that his mortgage still imparts notice of his lien on the property, to third parties. If the owner of goods stand by and knowingly permit them to be sold as the property of another, he will be estopped from afterward asserting title thereto; and this rule would seem applicable to mortgages of personal property.

There is another reason why the plaintiff cannot recover in this case. There is no proof whatever that the mortgaged property in his possession is not ample to secure his claim, and on the evidence before us he is entitled to recover nothing; but no objection is made on that ground.

The grain in question was purchased in the open market. The mortgagor held an interest in the grain itself, and

there being no sufficient constructive notice to third parties, could pass a good title by the sale.    The defendants, therefore, were not liable, and the instruction is not erroneous. The judgment of the district court must be affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.