SECURITY STATE BANK, APPELLEE, V. J. F. SCHOMBERG, APPELLANT.

FILED APRIL 18, 1930. No. 27157.

*M. H. Leamy,* for appellant.

*Douglas Cones* and *Allen Ardell, contra.*

Heard before GOSS, C. J., ROSE, DEAN, THOMPSON, EBERLY and DAY, JJ., and LIGHTNER, District Judge.

ROSE, J.

This is an action to recover $755.90 for conversion of

mortgaged corn and oats. To secure an indebtedness of $4,545.10 the chattel mortgage was executed June 9, 1927, and was a lien on live stock, farming implements, crops and other personal property in Pierce county. The crops were then growing on a half section of land definitely described in the chattel mortgage—land on which mortgagor was a tenant. He owned specified shares of the growing crops for the year 1927 and had 165 acres of corn and 110 acres of oats. The chattel mortgage contained recitals that he was in possession and that the lien included also "the matured crops of growing grain," whether "in the field, in cribs or bins, in elevator or any other place." The chattel mortgage was in proper form, was specific in describing the property, was duly filed in the office of the county clerk of Pierce county and was indexed on the public records. The Security State Bank of Osmond was mortgagee and is plaintiff herein. A. J. Konvalin was the mortgagor and the tenant occupying the land on which the crops were growing. After they matured his shares were separated on the premises from the shares of the landlord. Beginning September 30, 1927, and ending January 26, 1928, the mortgagor and tenant sold to J. F. Schomberg, defendant, at eleven different times, mortgaged corn and oats amounting in value to $755.90 and received the proceeds. To the extent of $2,231.27 the secured debt remained unpaid. The grain sold was delivered by mortgagor to defendant at the latter's elevator in McLean, a village within two miles of the farm on which the mortgaged corn and oats grew. Plaintiff alleged in its petition that defendant, with knowledge of the incumbrance, wrongfully received and converted the grain without the consent of plaintiff to the latter's damage in the sum of $755.90.

Defendant inserted in his answer a general denial of unadmitted allegations of the petition, and pleaded further that he had no knowledge or notice of the chattel mortgage; that plaintiff notified him, January 24, 1928, it had a lien on the crops described in the petition; that plaintiff then agreed with him to deduct from the purchase price of mort-

gagor's subsequent deliveries of the 1927 crops the amount of an account owing by mortgagor to defendant; that pursuant to such agreement defendant thereafter, January 26, 1928, received from mortgagor 679 bushels and 26 pounds of corn, deducted from the purchase price $124.50, the sum of the account mentioned, and drew a check payable to mortgagor and plaintiff for $317.15, the remainder of the proceeds; that the check is in the possession of plaintiff.

The reply to the answer was a general denial.

Upon a trial of the issues the district court directed a verdict in favor of plaintiff. From a judgment against defendant for $792.10 he appealed.

The order directing the verdict in favor of plaintiff is challenged as erroneous. Under this assignment it is argued that the chattel mortgage was not a lien on the grain when offered for sale in the open market at the elevator and that therefore defendant was not liable for conversion. In support of this proposition defendant relies on the following principle of law:

"A chattel mortgage upon growing grain is not constructive notice to third parties of a mortgage on the same grain thereafter lawfully placed in crib or bin; and a dealer in grain who in good faith in open market purchases such grain from the mortgagor, and receives it at his warehouse, will take it free from the lien of the mortgage." *Gillilan v. Kendall & Smith*, 26 Neb. 82.

Referring to this ruling in a later case the court said:

"It was held in *Gillilan v. Kendall*, 26 Neb. 82, contrary to the rule in other jurisdictions, that a chattel mortgage on a growing crop is not constructive notice of a lien upon the harvested product when offered for sale in the open market. We adhere to the principle announced in that decision." *Chicago Lumber Co. v. Hunter*, 58 Neb. 328.

In the latter case, however, the report shows that the crop was mortgaged as growing corn and that the contract of purchase was made while it was on the stalk in the field and it was held that the registered chattel mortgage imparted to the purchaser constructive notice of the lien.

An examination of the opinion in *Gillilan v. Kendall & Smith,* 26 Neb. 82, shows that it does not sustain the position of defendant herein, for the reason that the chattel mortgage there considered was confined by its terms to a lien on growing corn, while in the present instance the lien covers growing grain and "matured crops" whether "in the field, in cribs or bins, in elevator or any other place."

In support of the peremptory instruction plaintiff cites *Eigbrett v. State,* 111 Neb. 388, but that case is not in point. In a criminal prosecution Eigbrett was accused of selling mortgaged property in violation of law. He was the mortgagor and had actual knowledge of the lien. As between him and the mortgagee, the lien on the growing crop extended to the harvested grain which he unlawfully sold, the parties having intended to secure the debt by a lien on the matured crop. In the present case the purchaser in the open market was not a party to the chattel mortgage and he was without actual knowledge of the lien.

Independently of the cases cited by the parties the question now to be determined is: Did the registered chattel mortgage impart to defendant constructive notice that the grain was incumbered by a chattel mortgage? The rule in Nebraska has been stated thus:

"A description in a chattel mortgage which will enable a third person, aided by inquiries which the instrument itself suggests, to identify the property is sufficiently definite." *Farmers & Merchants State Bank v. Sutherlin,* 93 Neb. 707.

This rule applies to growing, mortgaged crops. 11 C. J. 468, sec. 96. A general principle has been stated in this form:

"The description of a crop is sufficient if it be such that a prudent, disinterested person, aided and directed by such inquiries as the instrument itself suggests, is able to identify the property." 11 C. J. 468, sec. 96.

What is sufficient to suggest inquiries is indicated by the following rule:

"A mortgage covering all or the entire crop of the mort-

gagor, taken in connection with the mortgagor's residence or the location of the land on which it is to be grown, is ordinarily sufficient to suggest such inquiries." 11 C. J. 468, sec. 96.

A copy of the chattel mortgage was on file in the office of the county clerk. What the public record disclosed was constructively imparted to defendant. If the chattel mortgage itself did not give him constructive notice that the grain delivered at his elevator by mortgagor was incumbered, it suggested inquiries which, if pursued, would have elicited knowledge of the lien. Defendant had an opportunity for inquiry every time mortgagor delivered a load of grain at the elevator. The chattel mortgage suggested inquiry by stating definitely the name of mortgagor; by describing in technical language the land occupied by him as tenant; by naming the mortgagor and the mortgagee; by specifying the different kinds of crops growing on the land described and the acreage of each; by reciting the indebtedness secured; by extending the lien on growing crops to the matured grain, whether "in the field, in cribs or bins, in elevator or any other place;" by indicating that the growing crops were within two miles of defendant's elevator. It is a fair inference that a simple inquiry directed to either party to the chattel mortgage would have elicited knowledge of the lien with resulting protection to both the mortgagee and the purchaser. In this view of the record absence of notice was not a defense.

On another ground, however, the order directing a verdict in favor of plaintiff was erroneous. The evidence was sufficient to present a question for the jury on the issue that plaintiff gave defendant actual notice of the lien January 24, 1928, and that, pursuant to an agreement between them on that date, defendant, two days later or on January 26, 1928, received 679 bushels and 26 pounds of the mortgaged corn, deducted from the purchase price $124.50 due him from mortgagor, drew a check jointly in favor of mortgagor and plaintiff for $317.15, the remainder of the proceeds, and delivered it to mortgagor. Under the agree-

ment plaintiff made mortgagor its agent to receive the check. The evidence shows that the check was in possession of plaintiff at the time of the trial. Defendant testified positively to the outlined facts. There was sufficient testimony to support this defense. For the purpose of testing the peremptory instruction on appeal the testimony of defendant on this issue is conclusive. At least to the extent of the two items mentioned, $124.50 and $317.15, or $441.65, defendant made a defense for the consideration of the jury.

The evidence shows that the agreement under consideration was made by defendant and the cashier of plaintiff, a banking corporation. In this connection plaintiff contends that the directors of the bank were its managers and argues that the cashier had no authority to bind it by such an arrangement. In entering into the agreement defendant was entitled to rely on the following statement of the law as recently adopted:

"While a cashier of a bank is presumed to have all the authority he exercises in dealing with executive functions legally within the powers of the bank, or which are usually done, or held out to be done, by such an officer, still the test is whether the transaction is with the bank and in its business, or with the cashier personally and in his business. As to the former, all presumptions are in favor of its regularity and binding force. As to the latter, no such presumptions arise." *Division No. 1, Railway Employees' Department, A. F. L., v. American State Bank,* 113 Neb. 196.

The first actual notice of the mortgage was given directly by the cashier. The action in tort had not been commenced. The cashier was acting for the bank and not for himself personally. The business in hand was the bank's business. The cashier had authority to accept a partial payment on the secured debt and to reduce the lien to that extent. The check that he agreed to accept was issued for the proceeds of mortgaged corn and was equivalent to a payment of $317.15 on the debt secured by the chattel mortgage. The bank was a beneficiary in the transaction. Before the agreement was made defendant's purchases of

the mortgaged grain amounted in value to $314.25 only. Thereafter he was induced by the agreement to make additional purchases of corn aggregating in value $441.65. Under the circumstances defendant had a right to assume that the cashier had the authority he exercised in the name of the bank. Defendant's part in the transaction was not precarious enough to outlaw the defense pleaded and proved.

The instruction directing the verdict in favor of plaintiff was prejudicially erroneous and for that reason the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.