DORA M. THOMAS, APPELLANT, v. PRAIRIE HOME COOPERATIVE COMPANY, APPELLEE.

FILED JULY 17, 1931. No. 27714.

*Edward C. Fisher* and *Frederick Patz,* for appellant.

*Burkett, Wilson, Brown, Wilson & Van Kirk, contra.*

Heard before Goss, C. J., Dean, Good, Eberly, Day and Paine, JJ.

Eberly, J.

This action was brought in the district court for Lancaster county by Dora M. Thomas as plaintiff against the defendant company for the conversion of certain corn. The plaintiff, a landlord, contended that she had a valid chattel mortgage on such corn, sold by one Harry W. McCall, her tenant, to the defendant, and by it converted to its own use. The defendant answered by a general denial, but pleaded specially that in good faith and without notice, actual or constructive, it had purchased the corn in question on the open market. There was a trial to a jury and verdict and judgment for the defendant. From an order denying a new trial plaintiff appeals.

By exceptions to instructions given, and to admission of certain evidence, as well as by appropriate motions, there is presented, as one of the questions for review, the sufficiency of the description in the chattel mortgage involved in this case (conceded to have been duly filed and indexed), viz., "85 acres of corn now growing on the farm I am now farming, described as (here follows correct description)," to identify the corn after the same has been husked and harvested. The district court answered this question in the negative, and by its order expressly overruled the motion for a new trial, "upon the authority of *Gillilan v. Kendall & Smith,* 26 Neb. 82, which stands somewhat alone and has been much criticized, but remains unreversed and unmodified."

The facts involved in the transaction include the following: Harry W. McCall had lived, as tenant, on the farm

now owned by plaintiff some twelve years. Plaintiff as owner succeeded to her husband's rights on the latter's death some years ago. The farm was situated within view of, and a quarter of a mile distant from, the defendant's elevator. The relation of landlord and tenant between plaintiff and McCall was well known to defendant's manager, Mr. Welch, at all times. He had actual knowledge where the corn in controversy was planted and when; observed its growth; knew when it was husked and placed in cribs; knew when it was shelled and marketed in his elevator; knew that the tenant was going to sell all of it and deliver both the landlord's and tenant's shares, and understood when he was dealing for the corn that he was buying all that was left on the Thomas place, and that the corn was the corn raised on the land in 1929. This manager's evidence is that he is now unable to state the exact date when arrangements for the sale of the corn were first made, but says that "it was in December, just a few days before he delivered it." The manager also testified: "Well, he (McCall) said Mrs. Thomas had told him as soon as he got done shucking she wanted to sell the corn, and he said he was going to sell his corn along with it." Defendant's manager also testifies that when the corn was delivered McCall, the tenant, informed him that the rent corn had been placed in cribs separate from his share, and that the two shares were not confused or mixed. As a matter of fact each share was separately delivered and separately received and paid for by the defendant.

Under these admitted facts, the appellant insists that the district court erred in the application of the rule announced by this court in Gillilan v. Kendall & Smith, 26 Neb. 82, viz.: "A chattel mortgage upon growing grain is not constructive notice to third parties of a mortgage on the same grain thereafter lawfully placed in crib or bin; and a dealer in grain who in good faith in open market purchases such grain from the mortgagor, and receives it at his warehouse, will take it free from the lien of the mortgage." In the case just cited it will be noted that

Maxwell, C. J., in the opinion of the court, states in part: "There is no testimony tending to show the entire quantity of corn produced by Ashton on the land of the plaintiff in section thirty, nor what portion of the crop, if any, Ashton was to deliver to the plaintiff for rent. For aught that appears, the amount of corn still remaining on the farm is sufficient to satisfy the mortgages in question." And, in such *Gillilan* case, the sole question to be determined by this court was presented by the exception to the instruction given by the district court in the following language: "A party taking a chattel mortgage upon growing grain, in order to preserve his lien, as against innocent purchasers, is bound to see that, when the corn is gathered, such notice is given to the public of his lien, by keeping the same separate and unmixed with other corn, as will prevent innocent parties from purchasing such corn. And in this case if the jury believe from the evidence that the plaintiff, after the execution of the mortgages offered in evidence by him, did nothing more than to file his mortgages in the office of the county clerk, and allowed the corn to become mixed with other corn, and if the jury further believe from the evidence that the defendants without actual notice of the existence of these mortgages purchased the corn, or some portion of it, at their elevator in the town of Malcolm, in open market, then the plaintiff cannot recover, and your verdict will be for the defendant." In the present case, all the corn raised on the land leased by the plaintiff to McCall is properly accounted for, and it also seems an admitted fact that the plaintiff's rent share was properly separated from the share belonging to the tenant, and that the tenant's share was capable of identification in the bin where it was stored. As between mortgagor and mortgagee the lien of the latter was perfect. *Eigbrett v. State*, 111 Neb. 388.

In the case of *Chicago Lumber Co. v. Hunter*, 58 Neb. 328, a similar question was before the court, wherein the mortgaged property was described as: " '50 acres of corn planted on the S.E.¼ of sec. 17-1-8, being the N.30 of the S.80 acres and the S.20 of the N.80 acres,' accompanied by

the further statement that the mortgaged property is in the possession of the mortgagor in N. county," etc. In that case this court held: "One who bargains for the future delivery of a quantity of corn to be taken from the stalk in a designated field is charged with notice of a then existing, and duly recorded, chattel mortgage in which such corn is described as a growing crop." Further, it was held: "When such corn is husked and delivered in execution of the contract, the purchaser is presumed to know that it is part of the crop covered by the mortgage."

And in *Fines v. Bolin*, 36 Neb. 621, this court expressly held that the rule announced in *Gillilan v. Kendall & Smith, supra*, "does not prevail where the person who assisted in husking the corn afterwards becomes the purchaser, while it is yet in the same pile or crib, and receives it there, having at the time actual knowledge that it is the same corn he helped harvest. In such case the purchaser will take the corn subject to the lien of the mortgage."

It would seem that the qualification made by the two cases last cited to the rule announced in the *Gillilan* case is important in the instant case.

This conclusion is reinforced by the pronouncement of this court in *Security State Bank v. Schomberg*, 119 Neb. 598, wherein we held: "The rule that a chattel mortgage enabling a third person, aided by inquiries suggested by the instrument itself, to identify the mortgaged property is sufficiently definite applies to chattel mortgages on growing crops." And further held: "As described in the opinion, the contents of a registered chattel mortgage on growing grain and also on the matured crop, whether 'in the field, in cribs or bins, in elevator or any other place,' *held* sufficient to suggest to a third person inquiries which, if pursued, would elicit knowledge that such grain, when delivered by the mortgagor at an elevator and sold by him there, was incumbered by the lien of the chattel mortgage." The foundation on which this opinion proceeds is that with a mortgage constructively before the purchaser containing the words, "in the field, in cribs or bins, in elevator or any other place," it suggests to the third person the aiding in-

quiries: "Where was this grain, in the field, what crib or bin or elevator was it stored in before being presented for sale?" It suggests inquiries which would logically cover the growth, production, harvest and storage of grain until presented in the open market for sale. But in the instant case, as well as in *Fines v. Bolin, supra,* and *Chicago Lumber Co. v. Hunter, supra,* no inquiries are or were necessary, for the defendants in each of these cases had actual knowledge of the history and identity of the grain, and the constructive knowledge of the original existence of the chattel mortgage added by law. The law does not require vain things, and therefore in each of the three cases just cited this court held the rule announced in *Gillilan v. Kendall & Smith, supra,* to be without application. The defendant in the instant case, under undisputed evidence, must be charged with actual knowledge that, at the time of the purchase by it, half of the corn grown on plaintiff's farm belonged to plaintiff as her rent share of the crop, and that the other half was the tenant's share, and that these shares were in no manner mixed. So long as the corn was standing in the field the law unquestionably imputed to the defendant knowledge or notice of the existence of the chattel mortgage on the tenant's share for plaintiff's benefit. Thus, what plaintiff's mortgage might have supplied to complete constructive notice as set forth and approved in *Security State Bank v. Schomberg, supra,* the defendant had actual, complete, contemporaneous knowledge of. The evidence fully discloses that when it made its deal with McCall, the tenant, for his tenant's share, it had actual knowledge of all the facts pertaining to the planting, growth, maturity, husking, storing, and shelling and marketing of the corn then purchased. As stated in *Fines v. Bolin, supra,* under this state of facts the rule of *Gillilan v. Kendall & Smith, supra,* does not prevail, and the purchaser will take the corn subject to the lien of the chattel mortgage.

While the facts in this record thus necessitate the reversal of the judgment, and a new trial, we are asked to overrule, or restate, the rule announced in *Gillilan v. Kendall & Smith, supra.*

As to the "doctrine of the law of the case" as a controlling precedent, the following is submitted for consideration, as applied to the question before us: "The authority of a former decision as a precedent must be limited to the points actually decided on the facts before the court." 15 C. J. 939. "The positive authority of a decision is coextensive only on the facts on which it is founded, and it can apply only in subsequent cases in which the issues are similar. Accordingly, in applying the rule of *stare decisis* to a former ·decision, the language of the opinion in the earlier case must be construed with reference to the particular facts presented in that case." 15 C. J. 941. See *Wilson v. Ulysses Township*, 72 Neb. 807; *State v. Marsh*, 107 Neb. 637.

The sole question presented to and decided by this court in the case of *Gillilan v. Kendall & Smith*, 26 Neb. 82, is the correctness of the instruction of the district court as the same appears on page 84. In response to this question this court held: "A mortgage, therefore, of growing grain is not notice of a mortgage on grain in a crib or bin, when it has been lawfully placed there by· the mortgagee or by the mortgagor with his consent."

There can be no question that in practically all other jurisdictions the recording of a chattel mortgage on crops to be grown, executed after the same have been planted, is, according to the generally accepted rule, operative as constructive notice, even after the crops have been severed. 11 C. J. 541; *Arnold v. Peasley*, 128 Wash. 176; *Adams v. Caldwell Milling & Elevator Co.*, 33 Idaho, 677; *Endreson v. Larson*, 101 Minn. 417; *Keel v. Levy*, 19 Or. 450; *Phillip Best Brewing Co. v. Pillsbury & Hurlbut Elevator Co.*, 5 Dak. 62; *Smith v. Taber*, 46 Hun (N. Y.) 313; Jones, Chattel Mortgages (5th ed.) 118, sec. 69; *United States Nat. Bank v. Great Western Sugar Co.*, 60 Mont. 342; *Close v. Hodges*, 44 Minn. 204; *Rider v. Edgar*, 54 Cal. 127; *Nichols, Shepard & Co. v. Barnes*, 3 Dak. 148; *Wilson v. Prouty*, 70 Cal. 196; *Pierce v. Langdon*, 3 Idaho, 141; *Zorn v. Livesley*, 44 Or. 501; *Duke v. Strickland*, 43 Ind. 494; *Wright v. Dickey Co.*, 83 Ia. 332.

The reasoning and conclusions of the court as stated by the learned author of the opinion in *Gillilan v. Kendall & Smith, supra,* is not only opposed to the decided weight of authority elsewhere, but is not in harmony with the terms of the subsequent cases in this jurisdiction. That opinion proceeds on the assumption that, "At law, a chattel mortgage passes the legal title in the property mortgaged to the mortgagee." This has been utterly repudiated in this jurisdiction. *Camp v. Pollock,* 45 Neb. 771. Nor do the later authorities in Nebraska support the rule expressed in this opinion as to the effect on the transaction relating to the growing of crops, because "of the amount of labor necessary to be performed by the mortgagor before the fruit of his labor may be reaped," as to difficulties involved due to the nature of the property mortgaged. 11 C. J. 442; *Sporer v. McDermott,* 69 Neb. 533; *Hayes v. First State Bank of Bertrand,* 5 Neb. (Unof.) 298; *Monnich v. Schwartz,* 4 Neb. (Unof.) 811; *Johns v. Kamarad,* 2 Neb. (Unof.) 157.

So, as to the language employed, the opinion may receive no support from the "market overt" theory suggested by the learned author. As to this, it is quite apparent that, "In the United States the rule has never been recognized that a sale in market overt protects a *bona fide* purchaser against the claims of the real owner from whom property has been stolen or tortiously taken, and it may be laid down as the established American doctrine that a purchaser in a public, open market acquires no better title to goods than if he had bought them elsewhere." 18 R. C. L. 368, sec. 4. It is also true that this court, so far as the doctrine of "market overt" is concerned, is wholly in harmony with the authority last referred to.

But there is legislation which has a bearing on the question before us. As part of the evidence, exhibit No. 2 in this case is a farm lease entered into on the 1st day of December, 1928, between Dora M. Thomas, Lincoln, Nebraska, and Harry W. McCall, Lincoln, Nebraska, which, by the employment of the usual terms, leases the land described for a certain rental, a part of which is in the na-

ture of grain rent, and part to be paid in cash on dates subsequent to the making of the lease. It also contains the following stipulation: "And it is further expressly agreed that the second party shall secure the performance of the terms and conditions of this lease on his part by giving to the first party on demand a chattel mortgage upon all or any part of the crops growing or gathered on said premises during said term."

Chapter 36, Laws 1927, under the title "An act to amend section 2550, Compiled Statutes of Nebraska for 1922, relating to chattel mortgages; providing that the recording of a lease containing an agreement ·for a chattel mortgage on unplanted crops shall constitute notice;" provided as follows: "Provided, that the filing of a lease containing an agreement for the execution of a chattel mortgage, or, therein constituting a chattel mortgage, on unplanted crops shall constitute notice of such an obligation and lien and protect the lessor against chattel mortgages given to other creditors by the lessee." We assume that the act referred to is remedial in its nature; that it is to be liberally construed, to the end that the legislative purpose and intent may be effectually carried out. It is obvious then that, as to cases within the purview of this statute, the doctrine of *Gillilan v. Kendall & Smith, supra,* has been wholly superseded.

As the result of the doctrines announced in *Fines v. Bolin, supra, Chicago Lumber Co. v. Hunter, supra,* and *Security State Bank v. Schomberg, supra,* the *Gillilan* case, if not in effect overruled *pro tanto,* has been materially qualified, and the legislation referred to plainly indicates the adoption of a public policy at variance with the fundamental proposition on which.the case proceeds.

We are all agreed in the instant case that the lien of the mortgage was perfect while the corn was attached to the stalk, and, as between the parties thereto, continued after the same had been harvested and placed in bins. *Eigbrett v. State,* 111 Neb. 388.

Courts take judicial notice of the phenomena of vegetable life which are matters of general knowledge in their

own jurisdictions *(Meyers v. Menter,* 63 Neb. 427); and of the ordinary course and law of nature; and will also take cognizance of the course of the seasons and of husbandry. They know judicially the season for planting and harvesting crops ordinarily planted in their own jurisdictions. These facts are well known, not only to all courts, but to all persons, and necessarily enter into and form the basis of all reasoning and inference in the ordinary affairs of life. It would follow that where a valid lien attached to growing crops as such, which is good as between the parties after it is harvested and stored, parties to whom constructive notice is imputable while the crops are unharvested must at their peril take notice of the phenomena of vegetable life, and the ordinary and usual course of the seasons and husbandry, and the ordinary and usual result thereof as affecting the product with which they deal. It would also follow that the doctrines as originally announced in *Gillilan v. Kendall & Smith, supra,* having been in effect substantially repudiated by this court, that case is now formally overruled. In lieu thereof the following is substituted: The filing of a chattel mortgage, as provided by section 36-301, Comp. St. 1929, on crops to be grown, executed after the same have been planted, is, according to the generally accepted rule, operative as constructive notice, even after the crops have been grown and severed.

The judgment of the district court is, therefore, reversed and the cause remanded for further proceedings in harmony with this opinion.

REVERSED.